**Jimmy Ray MOORE, Plaintiff-Appellant-Appellee,**

**v.**

**OLD REPUBLIC INSURANCE CO., Defendant-Appellant-Appellee,**

**and**

**Thomas A. Wiseman, Treasurer of the State of Tennessee, Defendant-Appellee.**

**Alonzo MOORE, Plaintiff-Appellant-Appellee,**

**v.**

**OLD REPUBLIC INSURANCE CO., Defendant-Appellant-Appellee,**

**and**

**Thomas A. Wiseman, Treasurer of the State of Tennessee, Defendant-Appellee.**

Supreme Court of Tennessee.

July 29, 1974.

H. Calvin Walter, Knoxville, for plaintiff below.

Earl R. Layman, Knoxville, David M. Pack, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Ronald A. Webster, Dist. Atty. Gen., John Gill, Richard Stair, Asst. Dist. Attys. Gen., for defendant below.

## OPINION

WILLIAM M. LEECH, Special Justice.

The two above styled causes are Workmen's Compensation cases having almost identical factual and legal issues, therefore, both cases were consolidated at trial and both were heard together before this Court. Thus, it necessarily follows that only one opinion will be necessary to dispose of both cases.

Both plaintiffs were coal miners suffering from coal worker's pneumoconiosis (Black Lung), which they allege caused them to be totally and permanently disabled under Tennessee's Workmen's Compensation Law. The facts were stipulated below as follows:

"1. That the plaintiff, Jimmy Ray Moore, (Alonzo Moore), was employed by the Gay Coal Company for a period of time up to September 1, 1972; (September of 1972); that following the termination of said employment the plaintiff was examined by a physician and advised that he was suffering from pneumoconiosis.

"2. That at the time the plaintiff last worked, the defendant, Gay Coal Company, was operating under and according to the provisions of the Workmen's Compensation Laws of the State of Tennessee and was insured by Old Republic Insurance Company; that Jimmy Ray Moore's (Alonzo Moore's) weekly wage was such as would entitle him to receive maximum benefits under the Workmen's Compensation Law; that he is married and has three children, Barbara Sue Noe, age 15; Charles Clifford Moore,

age 10; and Teresa Darlene Moore, age 8 and as such has four dependents. (that he is married and has two children, Betty Gail Moore, born September 14, 1966 and Sandra Kay Moore, born October 29, 1967 and as such has three dependents.) That plaintiff has previously sustained injuries to his back and various members of his body while working in the mines and that he is suffering from coal worker's pneumoconiosis. (That plaintiff has previously sustained injuries to his right leg, neck and back while working in the mines and that he is suffering from coal worker's pneumoconiosis.)

"3. That as a result of the previous injuries plaintiff had permanent disability, but nevertheless he was able to work under an impairment with risk and limitations within the scope and meaning of T.C.A. 50–1027 up until the date he last worked for Gay Coal Company.

"4. That if plaintiff's physician was called to testify, he would testify that the plaintiff is presently totally disabled from any employment for which he is qualified and that said disability is likely to be permanent, and said 100% disability results 25% (50%) from previous disabilities and 75% (50%) from pneumoconiosis; the two being co-mingled and combined."

In addition, the applicable rates were stipulated, "if the periodic benefit rates applicable to [these] cases are limited by the provisions of the Federal Coal Mine Health and Safety Act of 1969, as amended. . . ."

From the foregoing stipulations and from arguments of counsel, the Chancellor found that the plaintiffs suffered from an occupational disease, coal worker's pneumoconiosis, which arose out of and in the course of their employment with Gay Coal Company and that as a result, they were permanently and totally disabled. He also held that due to a prior injury that these cases were within the meaning of the

"Second Injury Fund". Subsequently, the Chancellor found that the maximum benefits payable pursuant to Tennessee's Workmen's Compensation Law were controlled by the applicable provisions of the Federal Coal Mine Health and Safety Act of 1969. Thus, pursuant to said Federal Act, the applicable rate was found to be $339.50 per month until the number of dependents was reduced. And since the "Second Injury Fund" was applicable, the insurer, Old Republic Insurance Co., was required to make payments for three hundred weeks at the rate of $339.50 per month to Jimmy Ray Moore, and payments of $339.50 per month for two hundred weeks to Alonzo Moore. Thereupon, for the next one hundred weeks and two hundred weeks respectively, the "Second Injury Fund" would pay the plaintiffs at the rate of $55.00 per week, during which time the insurer would pay the plaintiffs the difference between $55.00 per week and $339.50 per month. At the end of said four hundred weeks, then the insurer alone would pay the remainder of the plaintiffs' period of disability at the rate of $339.50 per month or at the stipulated reduced rate should the plaintiffs have less than three dependents.

As a result of the foregoing, defendants filed a petition to rehear which was subsequently overruled. Thereupon, appeal was brought direct to this Court pursuant to T.C.A. § 16–408.

All of the assignments of error filed in this cause are fairly summarized as follows:

"1. That the trial court erred in not holding invalid as violative by the Tennessee Constitution, as overly vague, the provisions of the Public Acts of 1971, Chapter 300, and the Public Acts of 1972, Chapter 699, as now codified as amendments to the Tennessee Workmen's Compensation Law, (T.C.A. § 50–1105) as applied to the facts of these cases.

"2. That should the Act be valid, the court erred in holding that T.C.A. Sec.

50–1105 referable to benefits "when total disability results from pneumoconiosis" applied under the stipulated facts of these cases.

"3. That if the Acts are valid and apply to the facts of these cases, the court erred in limiting the portion to be borne by the Second Injury Fund to $55.00 per week for one hundred weeks in the Jimmy Ray Moore case and $55.00 per week for two hundred weeks in the Alonzo Moore case."

In order to resolve the first issue, it is necessary to examine T.C.A. § 50–1105, which in part follows:

"An employee totally disabled due to coal worker's pneumoconiosis shall be paid benefits during disability as provided for by this law. If said employee has one or more dependents the payments shall be increased fifty percent (50%) of such payment for the first dependent, seventy-five percent (75%) for two dependents, and one hundred percent (100%) for three or more dependents. In case of death of an employee due to coal worker's pneumoconiosis, or of an employee receiving benefits under this law, benefits shall be paid to his widow and any dependents in the same manner provided for in this section. *Benefits paid under this paragraph* shall not be subject to the maximum compensation limitations set forth in § 50–1005, subsections (a), (c), (d) and (e) of §§ 50–1007, 50–1008, 50–1010, 50–1011, subsection (c)(11) of § 50–1013, or any other sections of the act, but *shall be controlled exclusively by the compensation benefits and limitations established under the Federal Coal Mine Health and Safety Act of 1969* (U.S.C., tit. 30, §§ 801–860) [960] *as applicable to employees suffering from coal workers pneumoconiosis.*" (Emphasis added).

Appellants content that the foregoing emphasized portion of T.C.A. § 50–1105 is unconstitutionally vague because "the reader . . . is left not knowing what the actual rate is, when it applies, or exactly what benefits and limitations . . . are applicable." They contend the vagueness is further complicated by the fact that U. S.C., tit. 30 §§ 801–860 [960] has nothing to do with benefits to be paid coal miners suffering from pneumoconiosis.

■ It is true that U.S.C., tit. 30 §§ 801–860 [960] does not refer to benefits, however, it is also true that section 6 of Chapter 699 of the Public Acts of 1972, which has been codified as T.C.A. § 50–1105, contains no reference to any United States Code section; therefore, it is obvious that the reference was added by the compiler. Since the reference to the United States Code was not in the Act passed by the Legislature and signed by the Governor, we hold it to be mere surplusage and as such it can not alter the sense or meaning of the Act in question. *See* T.C.A. § 1–108.

■ As for the remainder of Appellants' vagueness argument, it is clear on the face of T.C.A. §§ 50–1102—50–1109, how, when and where to determine "what the actual rate is, when it applies, [and] exactly what benefits and limitations . . . are applicable." To determine any or all of the foregoing, one must simply look to the Federal Coal Mine Health and Safety Act of 1969. We think this is in accord with the Legislature's intent, which was to adopt the Federal law concerning coal worker's pneumoconiosis as the law in Tennessee. This is evidenced by reading T.C.A. § 50–1102, which states in part that:

"[*All*] the presumptions, criteria and standards contained in or promulgated by reason of the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173 . . . *shall be used and be applicable under this law* . . . ." (Emphasis added).

In view of the foregoing, we find T.C.A. § 50–1105 to be constitutional, therefore, assignment one is overruled.

Assignment two is concerned with the language in T.C.A. § 50–1105, which states in part that "[an] employee *totally disabled due to coal worker's pneumoconiosis shall be paid benefits . . . .*" (Emphasis added). Appellants contend that the above emphasized language, in view of the stipulated facts that total disability resulted from pre-existing problems and pneumoconiosis, the two being co-mingled and combined, precludes recovery in the instant cases.

■ In order to resolve the aforesaid issue, we must look to the Federal Coal Mine Health and Safety Act of 1969, since said Act is now Tennessee law, being incorporated by reference. Looking to U.S. C., tit. 30 § 923, we find that the Secretary of Health, Education, and Welfare shall by regulation prescribe the proper guideline to implement the statute. In 20 CFR Ch. III § 715.101(4), one of the regulations so promulgated, the term "total disability" is said to be defined in Subpart D of Part 410. Therein, in § 410.412 ."total disability" is defined as follows:

"(a) A miner shall be considered *totally disabled due to pneumoconiosis if*:

"(1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time . . .; and

"(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months." (Emphasis added).

Applying this definition to the stipulated facts herein, it is clear that both plaintiffs were and are totally disabled due solely to pneumoconiosis. Notwithstanding some prior compensable dsiability, the workers were able to and did perform their duties in the coal mines and would have continued to be able to perform such duties in the absence of pneumoconiosis. It results, therefore, that assignment two is overruled.

In order to resolve the third assignment, which questions the applicability of the "Second Injury Fund", it is necessary to examine T.C.A. § 50–1027. Said Code section states in applicable part that:

"If an employee has previously sustained a permanent disability by reason of the loss of, or loss of use of, a hand, an arm, a foot, a leg, or an eye and *becomes permanently and totally incapacitated through the loss, or loss of use of another member, he shall be entitled to compensation from his employer or the employer's insurance carrier only for the disability that would have resulted from the latter injury, and such earlier injury shall not be considered in estimating the compensation to which the employee may be entitled under this law from the employer or the employer's insurance carrier;* provided, however, that in addition to such compensation for said subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" herein created." (Emphasis added).

■■ In view of our holding that both plaintiffs are totally disabled due solely to pneumoconiosis, and in view of the foregoing Code section; it is obvious that the "Second Injury Fund" is inapplicable since the prior injuries added nothing to the worker's final disability. Moreover, the occupational disease, coal worker's pneumoconiosis, is not an "injury" or "the loss of use of another member" within the meaning of T.C.A. § 50–1027.

■ Assuming *arguendo,* however, that the foregoing were not true, we must still hold that coal worker's pneumoconiosis can

not come within the meaning of the "Second Injury Fund", because this jurisdiction, by legislation, has taken coal worker's pneumoconiosis out of Tennessee's Workmen's Compensation Law and placed it within the Federal Coal Mine Health and Safety Act of 1969. Thus, the "Second Injury Fund" can have no applicability in pneumoconiosis cases. It results, therefore, that the Chancellor was in error when he found these cases to be within the meaning of the "Fund".

In conclusion, we hold that coal worker's pneumoconiosis cases are controlled by the Federal Coal Mine Health and Safety Act of 1969 and, therefore, the "Second Injury Fund", T.C.A. § 50–1027, has no applicability in such cases. In view of this holding, we remand these cases back to the Chancery Court for Knox County for disposition consistent with this opinion.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.