Wylie BLANKENSHIP, Appellant,

v.

OLD REPUBLIC INSURANCE COMPANY, Appellee.

Supreme Court of Tennessee.

June 28, 1976.

H. Calvin Walter, Walter, Gilbertson & Claiborne, Knoxville, for appellant.

Earl R. Layman, Key, Lee & Layman, Knoxville, for appellee.

## OPINION

HENRY, Justice.

This is a workmen's compensation case in which the sole issue presented for our determination is whether an employee's receipt of "Black Lung" benefits under the Federal Coal Mine Health and Safety Act of 1969[1] is *conclusive* as to the issue of disability in a workmen's compensation proceeding under § 50–1102, T.C.A.

I.

The appellant filed a claim for workmen's compensation benefits in the Chancery Court at Knoxville on July 22, 1974. In his complaint he alleged that pursuant to his employment with the Gay Coal Company, he "was required to work in air heavily laden with particles of dust and injurious substances" with the result that he was unable to continue working because of poor health. Specifically, appellant alleged that he was totally and permanently disabled from coal worker's pneumoconiosis.

A motion for summary judgment was filed by appellant on September 26, 1974. In it he alleged that § 50–1102, T.C.A. provides that pursuant to a finding in an administrative proceeding under the Federal Coal Mine Health and Safety Act of 1969 that an employee is entitled to benefits, "the said employee shall be considered totally disabled from coal worker's pneumoconiosis and its effect under the Workmen's Compensation Law of this State." Included with this motion was an exhibit entitled "Certificate of Award", issued by the Social Security Administration, entitling appellant to receive "Black Lung" benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969.

The Chancellor apparently was of the opinion that the mere fact of an award of benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969 was *not binding* upon the court in a state workmen's compensation proceeding under § 50–1102, T.C.A. Accordingly, appellant's motion for summary judgment was overruled.

At the trial appellant testified that he had spent approximately fifteen years working underground as a coal miner, and that he had been employed by the Gay Coal Company continuously from 1970 until the date he terminated his employment in May of 1973. The record indicates some conflict as to the precise cause of this termination. The appellant testified that a back injury was at least partly responsible for his ina-

1. The Federal Coal Mine Health and Safety Act of 1969, P.L. 91–173, is codified at 30 U.S.C.A. § 801 et seq. It was subsequently amended, in part, by P.L. 92–303 (May 19, 1972), codified at 30 U.S.C.A. § 901 et seq.

bility to continue working. However, he further testified that he had experienced lung problems for some five years prior to May, 1973, and that he had been medically examined and diagnosed as suffering from coal worker's pneumoconiosis prior to the termination of his employment.

In support of his testimony, and despite objection from opposing counsel, appellant was allowed to introduce into evidence the "Certificate of Award" from the Social Security Administration which entitled him to receive "Black Lung" benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969. In pertinent part, this Certificate states that:

A miner is considered to be totally disabled if he has pneumoconiosis which has advanced to the 'complicated' stage. He may also be considered totally disabled if he has a lung condition which prevents him from working as a coal miner, or doing other gainful work requiring the skills and abilities similar to those of any work in a mine or mines in which he previously engaged with some regularity over a substantial period of time.

The medical evidence in your case shows that while you have a lung condition, you do not have 'complicated pneumoconiosis.' Also, according to your records, you were employed in your regular occupation as a coal miner from February 6, 1973, the time you filed your application for black lung benefits until you stopped working because of your lung condition on May 23, 1973. Therefore, your claim for black lung benefits is being allowed as of June 1, 1973, the first day of the first month you did not work at a gainful level.

Medical records introduced by the appellee indicate that the appellant has been hospitalized on some nineteen separate occasions during the previous five years for a variety of ailments including, among other things, a knee operation, back surgery, high blood pressure, a deviated septum, tonsilitis, dermatitis, and stomach ulcers. Throughout this entire medical history, although admittedly somewhat incomplete, there is no indication that appellant has ever been diagnosed or treated for any type of lung disease.

In addition, the appellee introduced a medical report submitted by Dr. William K. Rogers, who examined the appellant pursuant to a request by the appellee. Dr. Rogers concluded that:

[t]here are only a few nodules in the right lower and left lower lung field which is unusual for a distribution of pneumoconiosis and I seriously doubt if there is any significant pneumoconiosis present. . .

. . . In other words I did not detect occupational lung disease in this case.

After considering all of this evidence, the Chancellor noted that the only *medical testimony* before the court concerning appellant's disability was the report by Dr. Rogers stating that he did not detect any occupational lung disease. Apparently as a result of the insufficiency of medical proof regarding the existence of appellant's disability, a continuance was granted to allow appellant time in which to obtain his medical records from the Social Security Administration. Subsequently, on December 22, 1975, the Chancellor determined that based upon these medical records obtained from the Social Security Administration, as well as all of the evidence previously introduced, the appellant did "not suffer disability as a result of an occupational disease which is compensable within the scope and meaning of the Tennessee Workmen's Compensation Law."

## II.

The appellant has challenged the Chancellor's determination, alleging that under § 50–1102, T.C.A., where an employee would be entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, that employee shall be considered totally disabled from coal worker's pneumoconiosis in any state workmen's compensation proceeding.

Any discussion of this question will, of necessity, involve a determination as to the precise meaning of the language contained

in the applicable provisions of our Workmen's Compensation Law. Section 50–1102, T.C.A., as amended, . . . in 1971, provides, in pertinent part, as follows:

> In considering whether an employee has the occupational disease of coal worker's pneumoconiosis and is totally disabled or dies therefrom all the *presumptions, criteria* and *standards contained in* or promulgated by reason of *the Federal Coal Mine Health and Safety Act of 1969,* Public Law 91–173, specified as the basis for determining eligibility of applicants for benefits because of said disease or its effects *shall be used and be applicable under this law, and where in a proceeding under this law for benefits it is determined the employee* or his dependents *would be entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, the said employee* or his dependents *by reason of said determination shall be considered totally disabled from coal worker's pneumoconiosis* and its effects, *under this law* the same as if said employee, or his dependents, establishes the right to recover benefits based upon a total disability from coal worker's pneumoconiosis, or death by reason thereof under the laws of this state. (Emphasis supplied).

The relationship between § 50–1102, T.C.A. and the federal act referred to therein has been previously considered by this Court on several occasions. In *Moore v. Old Republic Insurance Co.,* 512 S.W.2d 564 (Tenn.1974), we found that it was the intent of the Tennessee General Assembly "to adopt the Federal law concerning coal worker's pneumoconiosis as the law in Tennessee." 512 S.W.2d at 567.[2]

█ The result of such a determination is that all of the presumptions, criteria and standards contained in or promulgated by the Federal Coal Mine Health and Safety Act of 1969, that are used in determining the eligibility of applicants for benefits because of coal worker's pneumoconiosis,

have, by virtue of the enactment of § 50–1102, T.C.A., been incorporated by reference into Tennessee law. *Lawson, supra* at 224; *Moore, supra* at 568. Therefore, this portion of the federal act, and such portions of the federal regulations as pertain thereto, have become as much a part of our Workmen's Compensation Law as if they had been enacted, in their entirety, by the General Assembly.

█ With reference to the Federal Coal Mine Health and Safety Act of 1969, it was observed by this Court in *Hill v. Four-Leaf Coal Co.,* 529 S.W.2d 225 (Tenn.1975), that:

> [t]he criteria for total disability under said statute and regulations are *different from and less stringent* than those prescribed for total permanent disability under the Tennessee Workmen's Compensation Law. (Emphasis supplied). 529 S.W.2d at 226.

Therefore, any proceeding under our State Workmen's Compensation Law must necessarily be governed by the requirements of the federal act and the appropriate federal regulations, and not by the more stringent requirements prescribed under the state compensation statutes.

In the present case a federal administrative agency, presumably by application of the appropriate federal presumptions, criteria and standards, has made a determination that the appellant is, for purposes of receiving "Black Lung" benefits, totally disabled. It is appellant's contention that in the subsequent state proceedings under § 50–1102, T.C.A., proof as to his receipt of "Black Lung" benefits under the federal administrative proceeding, combined with a finding that appellant was subjected to work under a dusty environment for his last employer, Gay Coal Company, *establishes conclusively* appellant's right, under the State Workmen's Compensation Law, to recover total disability benefits from the appellee.

█ We do not agree that § 50–1102, T.C.A. requires such an interpretation. In

---

**2.** *See also Lawson v. Oneida Fuel and Coal Co.,* 529 S.W.2d 220, 222 (Tenn.1975) wherein *Moore* was cited for this identical proposition.

practical effect, this interpretation of the statute denies due process of law to the appellee, since there would never be any opportunity for the appellee to present proof as to whether the employee was actually disabled because of coal worker's pneumoconiosis, or to cross-examine the witnesses and rebut the evidence upon which the appellant's federal "Black Lung" benefits award was based. Such a result would be intolerable under the Tennessee Constitution, Article 1, Section 8, as well as the Fourteenth Amendment of the United States Constitution. It has long been an established rule of statutory construction in this state that when interpreting acts of the Legislature, where one construction would make a statute unconstitutional, and another interpretation would render it valid, every reasonable doubt must be resolved in favor of the legislative enactment. *Metropolitan Gov't of Nashville & Davidson County v. Reynolds,* 512 S.W.2d 6, 8 (Tenn. 1974); *Cole Manufacturing Co. v. Falls,* 90 Tenn. 466, 16 S.W. 1045 (1891).

Referring again to the pertinent language of the statute, § 50–1102, T.C.A. provides that:

> [W]here *in a proceeding under this law for benefits it is determined* the employee . . . would be entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, the said employee . . . by reason of said determination shall be considered totally disabled from coal worker's pneumoconiosis and its effects, under this law . . . .. (Emphasis supplied).

█ The quoted provision, *supra,* allows the state court in a workmen's compensation proceeding to make its own *independent determination* of whether an employee is entitled to federal "Black Lung" benefits, by applying the appropriate federal presumptions, criteria and standards. This independent determination may be based not only upon the claimant's federal "Black Lung" award, but upon any other competent evidence presented by either party.

█ We, therefore, hold that an employee's award of "Black Lung" benefits under the Federal Coal Mine Health and Safety Act of 1969 is not conclusive as to the issue of that employee's disability in a workmen's compensation proceeding under § 50–1102, T.C.A.

### III.

█ Although it might logically appear that similar results would obtain in both the federal *and* the state proceedings since identical presumptions, criteria and standards are applicable in making both determinations, such a result is not mandated by the express language of § 50–1102, T.C.A. From our holding in this case it is apparent that the federal and state proceedings may be based upon entirely separate evidence.

In the present case the Chancellor, after a delay of over a year, determined upon the basis of the appellant's medical records obtained from the Social Security Administration, and all other evidence introduced during the trial, that the appellant did not suffer disability as the result of an occupational disease which is compensable under the Tennessee Workmen's Compensation Law. His opinion contains no indication as to whether the requirements of the applicable federal statutes and regulations were considered in reaching this determination, or whether the case was tried and disposed of based purely upon the principles and standards governing ordinary workmen's compensation claims under state law.

Our review of this case is further complicated by the fact that we do not have before us in the record any of appellant's medical files which were obtained from the Social Security Administration and upon which the Chancellor, at least in part, based his final decree of December 22, 1973.

Under these circumstances we are of the opinion that complete justice cannot be obtained in the absence of this missing portion of the record. For that reason, and under the authority of § 27–329, T.C.A., the judgment will be vacated and the cause remanded for further consideration by the Chancellor. See *Floyd v. Tennessee Dickel Distilling Co.,* 225 Tenn. 65, 69, 463 S.W.2d 684, 686 (1971).

Upon retrial either party will be permitted to introduce supplemental or additional medical testimony concerning appellant's disability in order to enable the Chancellor to make appropriate findings and conclusions under the federal statutes and regulations which have been incorporated into our state law by § 50–1102, T.C.A.

Vacated and remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.