ROYAL INDEMNITY COMPANY,
INC., Appellant,

v.

George T. FUTTRELL, Appellee.

Supreme Court of Tennessee.

Aug. 20, 1979.

Robert R. Campbell, Knoxville, for appellant; Hodges, Doughty & Carson, Knoxville, of counsel.

H. Calvin Walter, Knoxville, for appellee; Walter, Gilbertson & Assoc., Knoxville, of counsel.

## OPINION

BROCK, Chief Justice.

This is a workmen's compensation case.

The plaintiff was employed for many years as a coal miner by the Cumberland Coal Company who insured its liability under the Workmen's Compensation Act with the appellant, Royal Indemnity Company, Inc. In 1972 plaintiff became disabled to continue said employment and brought an action under the workmen's compensation

law in the Chancery Court for Knox County seeking benefits for permanent total disability by reason of coal miner's pneumoconiosis and at that time, May 27, 1974, the Chancellor adjudicated his disability at 75% permanent partial disability to the body as a whole due to coal miner's pneumoconiosis and awarded benefits accordingly. In May, 1978, the plaintiff, conceiving that his disability by reason of the pneumoconiosis had increased to permanent total disability, filed a petition pursuant to T.C.A., § 50–1025, alleging that his disability had increased from 75% to 100% permanent disability and praying that his benefits be increased accordingly. The defendant denied that any increase in disability had occurred. The Chancellor conducted an evidentiary hearing and concluded that the employee's disability due to coal miner's pneumoconiosis had increased since the prior decree from 75% permanent disability to 100% permanent disability and rendered a decree accordingly. From that decree, the defendant has appealed to this Court asserting that (a) the evidence does not support the findings of the Chancellor and (b) that the Chancellor erred in computing the benefits payable under the Workmen's Compensation Act by applying the workmen's compensation rate in force at the time of the second hearing rather than the rate which was in force at the time of the injury and which was used in the decree following the first hearing.

## I

■ It is elementary that our sole function with respect to the first issue is to determine whether there is any material evidence in the record to support the finding of the Chancellor that the employee's disability due solely to the coal miner's pneumoconiosis had increased from 75% permanent disability to total permanent disability.

■ We conclude that there is such evidence consisting of testimony of the employee that since the first decree was entered he has suffered from blackout spells when he suffered spasms of coughing, that his coughing is now worse and more intense than it was at the time the first decree was entered, and the testimony of the thoracic surgeon that the x-ray evidence of the condition of the employee's lungs indicates that his condition now is more extensive and more acute than it was when the first decree was entered. These differences in the employee's condition were sufficient to convince the Chancellor who saw the employee at the time of the first hearing as well as at the time of the second hearing, that the employee's disability has increased from 75% permanent disability to 100% permanent disability.

There is no merit in the argument of the defendant that simply because the thoracic surgeon, Dr. Swann, gave opinion testimony at both the original hearing and at the hearing upon the petition for an increase in the award that the employee was permanently and totally disabled by reason of coal miner's pneumoconiosis; the Chancellor was entitled to conclude from all of the evidence introduced at the second hearing, including that above mentioned, that the employee's disability had increased since the entry of the first decree from 75% permanent disability to 100% permanent disability. *Cf. Dingus v. Holston Defense Corp.,* 211 Tenn. 20, 362 S.W.2d 249 (1962).

## II

■ In support of the Chancellor's action in applying the compensation rate currently in force at the time of the second hearing rather than that in force at the time the plaintiff became incapacitated for work and which was applied by the Chancellor at the first hearing, the plaintiff asserts that the Chancellor was following the directive of 30 U.S.C. § 922 as he was required to do under T.C.A., § 50–1105. That Federal statutory provision is as follows:

"922. Payment of Benefits—Schedules

(a) Subject to provisions of subsection (b) of this section, benefit payments shall be made by the Secretary under this part as follows:

(1) In the case of total disability of a miner due to pneumoconiosis, the

disabled miner shall be paid benefits during the disability at a rate equal to 50 per centum of the minimum monthly payment to which a Federal employee in grade GS–2, who is totally disabled, is entitled *at the time of payment* under Chapter 81 of Title 5." (Emphasis added.)

It is our opinion, however, that a determination of the rate of compensation to be paid under the Workmen's Compensation Act must be governed, not by the Federal statute, but by the Workmen's Compensation Act of Tennessee and the decisions of this Court construing it. We do not agree with the plaintiff's argument that T.C.A., § 50–1105, adopts the schedule of benefits provided by the Federal Coal Mine Health and Safety Act of 1969. In pertinent part, § 50–1105, provides:

"An employee totally disabled due to a coal worker's pneumoconiosis shall be paid benefits during disability *as provided for by this law.* If an employee has one or more dependents the payments shall be increased fifty per cent (50%) of such payment for the first dependent, seventy-five per cent (75%) for two (2) dependents, and one hundred per cent (100%) for three (3) or more dependents. In case of death of an employee due to coal worker's pneumoconiosis, or of an employee receiving benefits under this law, benefits shall be paid to his widow and any dependents in the same manner provided for in this section. *Benefits* paid under this paragraph *shall not be subject to the maximum compensation limitations* set forth in § 50–1005, subsections (a), (c), (d) and (e) of § 50–1007, §§ 50–1008, 50–1010, 50–1011, subsection (c)(11) of § 50–1013, or any other sections of the Workmen's Compensation Law, *but the maximum compensation limitations shall be controlled exclusively by the maximum compensation benefits and limitations established under the Federal Coal Mine Health and Safety Act of 1969 (U.S.C., tit. 30, §§ 801–960) as applicable to employees suffering from coal workers pneumoconiosis.* However, the minimum compensation limitations for employees

suffering from coal workers pneumoconiosis shall be no less than those set forth in subsection (d) of § 50–1007 for employees permanently and totally disabled by reason of injury." (Emphasis added.)

We hold that this statutory provision incorporates only *the maximum limits of compensation* contained in the Federal Coal Mine Health and Safety Act of 1969, but that in all other respects the benefits payable under the workmen's compensation laws of Tennessee for coal worker's pneumoconiosis are as set out in the Tennessee statutes, e. g., T.C.A., § 50–1007(d).

It is true that this Court reached the contrary conclusion in *Moore v. Old Republic Ins. Co.,* Tenn., 512 S.W.2d 564, 567 (1974), but there is no inconsistency because the crucial language of T.C.A., § 50–1105, has been materially altered since that decision. Thus, in contrast to the provisions of T.C.A., § 50–1105, as above quoted, that code section, as it existed and was construed by the court in *Moore,* provided:

"*Benefits* paid under this paragraph shall not be subject to the maximum compensation limitations set forth in § 50–1005, subsections (a), (c), (d) and (e) of §§ 50–1007, 50–1008, 50–1010, 50–1011, subsection (c)(11) of § 50–1013, or any other sections of the act, *but shall be controlled exclusively by the compensation benefits and limitations established under the Federal Coal Mine Health and Safety Act of 1969 (U.S.C., tit. 30, §§ 801–860) [960] as applicable to employees suffering from coal workers pneumoconiosis.*"

Obviously, the legislature changed the import of T.C.A., § 50–1105, when it enacted Chapter 210, Public Acts of 1975, which deleted the sentence beginning "Benefits paid under this paragraph, etc." and substituted in lieu thereof the language beginning with the same words, "Benefits paid under this paragraph etc." as it now exists in that code section and is first above quoted. At the time of the *Moore* decision, T.C.A., § 50–1105, provided that the Federal Coal Mine Health and Safety Act of 1969 was controlling not only with respect to the

maximum compensation benefits to be paid for coal worker's pneumoconiosis but that such benefits

".  .  .  shall be controlled exclusively by the maximum compensation benefits and limitations established under the Federal Coal Mine Health and Safety Act of 1969 as applicable to employees suffering from coal worker's pneumoconiosis."

Accordingly, we conclude that, although the *Moore* decision was correct at the time it was rendered, it is not a controlling precedent for construing the language of T.C.A., § 50–1105, as it presently exists.

We conclude that this issue is controlled by the recent decision of this Court in *Liberty Mutual Ins. Co. v. Starnes,* Tenn., 563 S.W.2d 178 (1978), opinion by Mr. Justice Cooper in which we said:

"Absent some indication of a contrary intent on the part of the legislature, the statute that determines the rights of the parties under the Workmen's Compensation Law is that in effect on the date of the accident or injury that provides the basis for the employee's claim. *See Cates v. T. I. M. E., DC, Inc.,* 513 S.W.2d 508 (Tenn.1974). In the case of a claim arising from an occupational disease, the date of the 'accident or injury' is the date on which the employee becomes partially or totally incapacitated for work. T.C.A. § 50–1105. *See Tennessee Products & Chemical Corp. v. Reeves,* 220 Tenn. 148, 415 S.W.2d 118 (1967); *Adams v. American Zinc Co.,* 205 Tenn. 189, 326 S.W.2d 425 (1959)." 563 S.W.2d at 179.

Therefore, we conclude that the Chancellor should have applied the rate of compensation in effect at the time the plaintiff's "partial or total incapacity for work" due to coal worker's pneumoconiosis occurred, rather than the rate of compensation which was thereafter enacted and was in effect at the time of the last hearing in the Chancery Court. In this respect, the decree of the Chancellor is in error and must be reversed.

The appellant's first assignment of error is overruled but its second assignment of error is sustained and the decree of the Chancellor is set aside. The cause is remanded to the trial court for further proceedings consistent with this opinion. Costs incurred in this Court will be assessed equally against the appellant and the appellee.

FONES, COOPER and HARBISON, JJ., and FRANKS, Special Justice, concur.