James **SOLOMON,** Plaintiff-Appellee,

v.

**OLD REPUBLIC INSURANCE COMPANY,** Defendant-Appellant.

Supreme Court of Tennessee.

Feb. 6, 1984.

H. Calvin Walter, Knoxville, for plaintiff-appellee.

Francis A. Cain, Knoxville, for defendant-appellant; Key, Lee & Layman, Knoxville, of counsel.

## OPINION

BROCK, Justice.

The defendant, Old Republic Insurance Company, appeals from the decree of the Chancery Court which awarded to the plaintiff employee benefits under the Worker's Compensation Law for total permanent disability, finding that the plaintiff suffers from coal miner's pneumoconiosis, an occupational disease, which arose out of and in the course of plaintiff's employment as an underground miner in the coal mine operated by the defendant's insured.

The only issue presented upon this appeal is whether or not the record contains any material evidence to support the finding of the trial court that the plaintiff has been rendered permanently and totally disabled

by reason of the coal miner's pneumoconiosis from which he suffers. Our examination of the record discloses that it does contain such evidence in the testimony of Dr. Swann, Dr. Rogers and the plaintiff himself. We, therefore, affirm the decree of the trial court.

Both Dr. Swann, who testified on behalf of the plaintiff, and Dr. Rogers, who testified on behalf of the defendant, agree that the plaintiff does suffer from coal miner's pneumoconiosis; both physicians testified that x-rays of the plaintiff's chest disclosed the existence of that occupational disease.

Dr. Swann, who examined the plaintiff on more than one occasion, is a specialist in thoracic surgery and chest diseases and is especially qualified as a "B reader," a specialist in the interpretation of x-rays of the chest to determine whether or not the patient has coal miner's pneumoconiosis and, if so, the extent of that illness. Dr. Swann not only took x-rays of the plaintiff's chest but he also conducted arterial blood gas studies and pulmonary function tests. A portion of Dr. Swann's testimony is as follows:

"Q. Doctor, as a result of this man's history and your examination, do you have an opinion, based upon reasonable medical certainty, as to whether or not he is suffering from coal worker's pneumoconiosis?

"A. Yes, he is.

"Q. Doctor, do you have an opinion, based upon reasonable medical certainty, as to the degree of this man's disability insofar as performing coal work is concerned?

"A. I would classify him as being disabled, certainly, in terms of being able to do his regular job in underground coal mines."

Dr. Rogers, who examined the plaintiff one time at the request of the defendant, concurred in Dr. Swann's opinion that the plaintiff suffers from coal worker's pneumoconiosis, finding that such condition was shown by x-rays of the plaintiff's chest. He testified that the plaintiff could continue to do some manual labor and might even be able to work in coal mines, but, agreed that such work might worsen the degree of coal worker's pneumoconiosis suffered by the plaintiff.

The plaintiff's testimony revealed that he is 66 years of age and has spent most of his working life in coal mining employment. He worked for the past 14 years in underground mines operated by the defendant's insured, Oliver Springs Mining Company. When asked if he had experienced any problems with his health as a result of his coal mining work, he testified:

"Yes, sir, I have a lot of trouble breathing. I can't breathe, especially every night, you know."

He explained that he had been examined by physicians and further testified as follows:

"Q. Mr. Solomon, are you having any type of problem now, today, with your breathing that you can tell the court about?

"A. Yes, sir, I am.

"Q. Could you explain to the court what type of problems you are having?

"A. Well, I just get to where I can't get my breath. It seems like I choke up in my throat and my breathing every night, especially. I have times when I have to get up to even sit up to breathe. I have to have my head up high to breathe.

"Q. Mr. Solomon, what is the extent of your formal education? How far did you go in school?

"A. Fourth grade.

"Q. Have you had any additional training or any technological schooling or any specific courses that would teach you to do any other type of work?

"A. No sir."

When asked whether he has been able to engage in physical activities since his retirement from the coal mines, he testified:

"A. Just staying around home.

"Q. Do you do anything outside, any gardening or anything?

"A. No, I can't. I ain't got enough breath to work it now.

"Q. Not able to do anything like that?

"A. No."

The Chancellor concluded, from all of the evidence presented, that the plaintiff suffers from coal miner's pneumoconiosis which arose out of and in the course of his employment as an underground coal miner and that this condition has rendered him permanently and totally disabled within the meaning of the Worker's Compensation Act.

■ T.C.A., §§ 50–6–302 and 50–6–303, incorporated into the Tennessee Worker's Compensation Law that portion of the Federal Coal Mine Health and Safety Act of 1969, as amended, which concerns ·coal worker's pneumoconiosis (compiled as 30 U.S.C. §§ 901, 902, 921–925, 931–941 and 951, cited as the Black Lung Benefits Act of 1972). *Moore v. Old Republic Insurance Co.*, Tenn., 512 S.W.2d 564 (1974). Accordingly, the presumptions and standards created by the Federal Act and regulations that are used to determine eligibility for black lung disability payments are incorporated by reference into the state law. *Blankenship v. Old Republic Insurance Co.*, Tenn., 539 S.W.2d 23 (1976), aff'd, 567 S.W.2d 156 (Tenn.1978). The determination whether or not a worker is totally disabled from pneumoconiosis must be governed by the Federal statutes and regulations. *Gibson v. Consolidation Coal Company*, Tenn., 588 S.W.2d 290 (1979).

The Federal regulations provide that a finding of total disability may be based on certain medical criteria alone, such as pulmonary function tests and tests disclosing the amount of oxygen in the blood. 20 CFR § 410.424. The principal argument of the defendant upon appeal is that upon the evidence in this case petitioner's total disability cannot be shown by these medical criteria. Petitioner disputes this, in part, asserting that Dr. Swann's testimony respecting the tests which showed the amount of oxygen in petitioner's blood were adequate under the Federal regulations to establish disability.

■ However, the establishment of total permanent disability due to coal miner's pneumoconiosis is not restricted to the medical test values alone. Thus, 20 CFR § 410.422(c) provides:

"Whether or not the pneumoconiosis in a particular case renders (or rendered) a miner totally disabled, as defined in § 410.412, is determined from all the facts of that case. Primary consideration is given to the medical severity of the individual's pneumoconiosis (see § 410.-424). Consideration is also given to such other factors as the individual's age, education, and work experience (see § 410.-426)."

Again, 20 CFR § 410.426(d) provides:

"When a ventilatory study and/or a physical performance test is medically contraindicated or cannot be obtained, or where evidence obtained as a result of such test does not establish that the miner is totally disabled, pneumoconiosis may nevertheless be found *totally disabling if other relevant evidence* (see § 410.414(c)) establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work." (Emphasis added.)

■ We find *adequate evidence in the* record to support the finding by the trial court of permanent total disability under the last two quoted sections of the Federal regulations, such evidence consisting of the testimony of Dr. Swann coupled with the testimony of the petitioner himself that he is 66 years of age, has only a fourth grade education and is unable to do even menial physical tasks such as working in a garden around his home, due to the impairment of his breathing ability.

Accordingly, we find no error in the record and affirm the judgment of the trial

court. Costs incurred upon appeal are assessed against the appellant and surety.

FONES, C.J., and COOPER, HARBISON, and DROWOTA, JJ., concur.