Mike P. LAWSON, Appellant,

v.

**ONEIDA FUEL AND COAL COMPANY, Appellee.**

Supreme Court of Tennessee.

Oct. 27, 1975.

J. Gregory O'Connor, Knoxville, for appellant.

Earl R. Layman, Knoxville, for appellee.

## OPINION

HARBISON, Justice.

This is a workmen's compensation case in which the appellant, Mike P. Lawson, is suffering from coal worker's pneumoconiosis, an occupational disease covered under the Tennessee Workmen's Compensation Act, T.C.A. § 50–1101.

There is no dispute as to the material facts. The employee, appellant here, has been engaged in underground coal mining for most of his adult life. At the time of the hearing below he was 56 years of age and had the equivalent of approximately a seventh grade education. It was stipulated that he was suffering from coal worker's pneumoconiosis, as a result of his long exposure to coal dust, and that he was last injuriously exposed to the hazards of that disease while in the employ of appellee. Counsel for appellee stated at the hearing that "the only issue in this lawsuit is the degree of disability, if any, that this man has as a result of an occupational disease."

Two admittedly qualified thoracic surgeons examined the appellant, and both found him to be suffering from coal worker's pneumoconiosis. At the conclusion of the hearing the trial judge rendered a memorandum opinion, and subsequently entered a judgment, reciting in the judgment that "the plaintiff suffers an 80% permanent partial disability referable to the body as a whole, within the scope and meaning of the Tennessee Workmen's Compensation Law, as the result of an occupational disease, caused by exposure to coal dust from his occupation as a coal miner."

The employee has appealed, alleging that he is entitled to total disability benefits under the applicable state and federal statutes dealing with this particular occupational disease, coal worker's pneumoconiosis.

Although pneumoconiosis has long been recognized as an occupational disease under the Tennessee Workmen's Compensation Act, special amendments to the workmen's compensation act dealing with this particular disease were adopted by the Tennessee General Assembly through Chapter 300 of the Public Acts of 1971 and Chapter 699 of the Public Acts of 1972 (adjourned session). T.C.A. § 50–1102, as amended in 1971, provides in material part as follows:

"In considering whether an employee has the occupational disease of coal worker's pneumoconiosis and is totally disabled or dies therefrom all the presumptions, criteria and standards contained in or promulgated by reason of the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173, specified as the basis for determining eligibility of applicants for benefits because of said disease or its effects shall be used and be applicable under this law, and where in a proceeding under this law for benefits it is determined the employee or his dependents would be entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, the said employee or his dependents by reason of said determination shall

be considered totally disabled from coal worker's pneumoconiosis and its effects, under this law the same as if said employee, or his dependents, establishes the right to recover benefits based upon a total disability from coal worker's pneumoconiosis, or death by reason thereof under the laws of this state."

Benefits payable for this occupational disease are specified in the last paragraph of T.C.A. § 50–1105.

The Federal Coal Mine Health and Safety Act of 1969 is codified at 30 U.S.C.A. § 801 et seq. The occupational disease of coal worker's pneumoconiosis is dealt with in detail at 30 U.S.C.A. § 901 et seq.

In the case of *Moore v. Old Republic Insurance Company*, 512 S.W.2d 564 (Tenn. 1974), this Court recognized the state and federal legislation above referred to and the regulations issued pursuant to the federal statute. The Court found that it was the intent of the Tennessee General Assembly "to adopt the Federal law concerning coal worker's pneumoconiosis as the law in Tennessee." 512 S.W.2d at 567.

In that case the Court quoted from the regulations issued by the Secretary of Health, Education and Welfare, in which total disability under the federal statute is found to exist in a miner if:

"(1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time . . . ; and

"(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months."

20 C.F.R. § 410.412

It is clear that the criteria for total disability under the federal statute and regulations are substantially different from and less stringent than those ordinarily governing claims under the Tennessee Workmen's Compensation Act. Permanent total disability is defined in T.C.A. § 50–1007(e) as an injury which "totally incapacitates the employee from working at an occupation which brings him an income . . . ." By T.C.A. § 50–1105, the partial or total incapacity to work or death resulting from an occupational disease is equated to the happening of an injury by accident or death by accident.

In the present case appellant testified that he had been unable to do any gainful work since leaving the employ of appellee in September 1973. There were no other witnesses in the case, except the depositions of the two physicians who examined him. One of these, Dr. William K. Swann, examined appellant on September 13, 1973 and on February 13, 1975. He testified as to various tests which he administered to the employee, who was 66 inches tall and weighed 125 pounds. The results of these tests were exhibited to the doctor's testimony, and they revealed minimum results lower than those specified in the regulations issued pursuant to the federal statute, 20 C.F.R. § 410.426(b). Dr. Swann testified:

"The diagnosis is coal workers' pneumoconiosis, or the synonym for that is anthracosilicosis. This disease, this named disease . . . is manifested by interstitial nodular pulmonary fibrosis throughout the entirety of both lung fields. That's number one. The second manifestation is severe obstructive ventilatory impairment. The third manifestation is overdistended lungs. The fourth manifestation is hypoxemia with a p02 of 70.3 mm.

"Q Doctor, what is hypoxemia?

"A Hypoxemia is less than normal oxygen capacity in the blood, oxygen content in the blood.

"Q Dr. Swann, do you have an opinion within a reasonable degree of medical certainty as to the cause of Mr. Lawson's coal workers' pneumoconiosis and the manifestations of that disease?

"A Yes. It is due to thirty-six years employment in the underground coal mines."

Based upon his findings, Dr. Swann testified that the employee's condition was permanent and irreversible. He stated that he did not believe that the appellant was "employable at all."

On cross-examination Dr. Swann testified that he made his findings and conclusions independently of any other lung condition from which the employee might suffer, such as bronchitis. He stated on cross-examination that the employee might possibly perform some work such as a gate keeper or timekeeper, but that he was "awfully close" to being one hundred percent physically impaired.

The appellant was examined on behalf of the employer by Dr. William K. Rogers, a thoracic surgeon. Dr. Rogers testified that in addition to the work history and symptoms described by the patient, appellant stated that he smoked a package of cigarettes each day and was continuing to smoke when examined by the doctor on December 5, 1974.

Dr. Rogers found that appellant was suffering from pneumoconiosis and detected nodules in all of the right lung. He stated that he did not see any nodulation in the left lung. He found that the employee had a "bona fide category one" condition of "simple pneumoconiosis." The doctor reported the results of tests which were given by him or under his supervision, and some of these, also, were below the minimum specified as "disabling" under C.F.R. § 410.-426.

Dr. Rogers, being asked about appellant's ability to perform work, testified:

"Well, I think that anything that he did in the way of work would have to be a pretty sedentary type of thing where it didn't require a lot of walking, and did not require heavy lifting more than, say, twenty pounds where he pretty much stayed in one place, and he wouldn't necessarily have to sit down, but it would have to be pretty light work."

He further testified on direct examination:

"Q Doctor, the conditions that you diagnosed in Mr. Lawson are what specifically? What are the diseases—

"A Okay.

"Q From which he suffers?

"A His primary diseases are pulmonary emphysema or chronic obstructive lung disease and coal workers pneumoconiosis, "P" sized nodulation with category 1/1. Those were his major ones, and you could add to that chronic bronchitis."

Dr. Swann testified that he felt that the bronchitis was of such long standing that it would not be totally reversible but he felt that the appellant's "respiratory condition" would improve if he stopped smoking. He then testified:

"Q And I take it as to the degree to which his condition is caused by the pneumoconiosis, by the emphysema, and by the bronchitis, you wouldn't be able to break that down either as to what extent each contributes to his condition?

"A No, sir. I think it's—it's just the whole summation."

On cross-examination Dr. Rogers stated that the employee was not able to resume any type of work in underground coal mining, and that he should not re-expose himself to coal dust. He also stated that the pulmonary emphysema, or "the more modern term" according to the doctor of "chronic obstructive lung disease" is related to the presence of coal worker's pneumoconiosis. He stated, however, that since appellant was a reasonably heavy smoker and that since smoking was also a common cause of emphysema, he was unable to say whether the emphysema came as a result of the working conditions, the smoking, or both. He said: "I think the only thing we can say is that in the coal miner pulmonary emphysema is a frequent accompanying disease."

Dr. Rogers stated that in view of the work history of thirty-five to thirty-seven years of underground coal mining,

"The evidence that is accumulated and is available at the moment would indicate that it could have been responsible for a portion of his emphysema."

Dr. Rogers testified that he had examined thousands of coal miners and had found that there was a high incidence of bronchitis among coal workers, but he also stated that many persons who smoked had this disease, so that he could not "specifically say that working in the coal mines was—caused bronchitis."

As previously pointed out, the determination as to whether appellant is totally disabled from pneumoconiosis must be governed by the federal statutes and regulations incorporated into the Tennessee Workmen's Compensation Act in 1971. At 20 C.F.R. § 414.414 there are a number of guidelines and presumptions set out for determining the existence of pneumoconiosis. There are provisions that even if there has not been a diagnosis of the disease by chest X-ray, biopsy or autopsy, there may be a presumption of total disability due to pneumoconiosis if "other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment . . .."

The regulations provide that such presumption may be rebutted only if it is established that the miner does not have pneumoconiosis or that his respiratory or pulmonary impairment did not arise out of or in connection with employment in a coal mine. The provision of 20 C.F.R. § 410.414(b), and the presumptions arising thereunder, "shall apply where a miner was employed for 15 or more years in one or more of the Nation's underground coal mines . . .."

At subparagraph (4) of the foregoing regulation the following is found:

"However, where the evidence shows a work history reflecting many years of such coal mine employment (although less than 15), as well as a severe lung impairment, such evidence may be considered, in the exercise of sound judgment, to establish entitlement in such case, providing that a mere showing of a respiratory or pulmonary impairment shall not be sufficient to establish such entitlement."

Tested by the general standards applicable in workmen's compensation cases under the Tennessee statutes, the findings of the trial court, to the effect that the employee does not suffer from total permanent disability, are supported by material evidence, in that both physicians did testify that appellant could engage in some gainful occupation or employment. In a memorandum filed by the trial judge prior to the entry of final judgment, the statement was made that the employee, despite his substantial disability, "has some capacity for useful labor . . .." This, however, is simply not the criterion for "total disability" under the applicable statutes and regulations governing coal worker's pneumoconiosis. The finding, incorporated into the final judgment, that the employee suffers eighty percent permanent partial disability as the result of coal worker's pneumoconiosis, in addition to the uncontradicted testimony that he is totally unable to perform work comparable to that which he had performed in underground coal mining, may well entitle the employee to an award of total disability benefits under the applicable federal statutes and regulations. The regulations provide for recovery of total disability benefits if the pneumoconiosis is "the primary reason for his inability" to engage in gainful work comparable to that previously performed. 20 C.F.R. § 410.426(a). This, however, is a finding and conclusion which should, in the first instance, be made by the trial judge in a pneumoconiosis case.

It is our conclusion from examination of the record that this case was tried and disposed of below on principles and standards governing ordinary workmen's compensation claims under state law, and that the applicable federal statutes and regula-

tions were not considered. Accordingly we vacate the judgment of the trial court and remand the case for a new trial, in which the trial judge will make appropriate findings and conclusions under the federal statutes and regulations incorporated into state law, and will award disability benefits accordingly. We call attention to the fact that if total disability benefits are awarded, specific procedures for their termination are provided at 20 C.F.R. § 410.432.

Upon the retrial of this case either party may, of course, introduce supplemental or additional medical testimony, or the trial judge may direct that this be done in order for him to make appropriate findings and conclusions under the applicable law.

Costs of the appeal are taxed to appellee.

FONES, C. J., COOPER and HENRY, JJ., and INMAN, Special Justice, concur.