Charlie TONKER, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education and Welfare, Respondent.

Civ. A. No. 75–0162–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

April 19, 1976.

Donald E. Earls, Cline, McAfee, Adkins & Gillenwater, Norton, Va., for plaintiff.

Donald Huffman, Asst. U. S. Atty., Roanoke, Va., for respondent.

## OPINION AND JUDGMENT

TURK, Chief Judge.

Plaintiff has filed this action challenging the final decision of the Secretary of Health, Education, and Welfare denying his claim for "black lung" benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* Jurisdiction of this court is pursuant to § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The issues to be decided by this court are whether the Secretary's decision is supported by "substantial evidence", and if it is not, whether plaintiff has met his burden of proof as established by and pursuant to the Act.

The plaintiff, Charlie Tonker, was born on June 17, 1903. Mr. Tonker stated that he never attended school. Mr. Tonker also related that he went to work in the Nation's coal mines when he was eleven years old. Thereafter, plaintiff worked in underground mining operations as a brakeman, motorman, and cutting machine operator for almost 49 years. Since his mine retirement in April of 1965, Mr. Tonker has not worked in any other capacity. All of the plaintiff's work in the coal mines involved exposure to significant quantities of dust. Mr. Tonker now alleges that as a result of such work, he had developed a breathing impairment of severity sufficient to entitle him to benefits under the Act. He has presented various medical reports and testimony in support of his claim.

The first medical evidence to be considered consists of a series of reports compiled while Mr. Tonker was hospitalized in the Appalachian Regional Hospital from March 18, 1967 to April 1, 1967. At that time, plaintiff was successfully treated for an acute posterior myocardial infarction. Medical notations on plaintiff's progress reports suggest an otherwise normal chest condition. An x-ray report dated March 18, 1967 revealed fibrosis, slight bronchitis, and an otherwise normal chest. Shortly after Mr. Tonker's discharge, Dr. D. B. Jones completed a second x-ray analysis which confirmed the earlier diagnosis. However, Doctors G. J. Rosenstein and Meyer Jacobson both reread Dr. Jones' film as negative for pneumoconiosis.

Dr. James Profitt read a film dated August 4, 1970 as negative for pneumoconiosis. The film was reread by Doctors B. W. Gaylor and L. Murphy. Dr. Gaylor described the film as negative while Dr. Murphy considered the film to be unreadable. Dr. S. R. Sewell completed a general medical evaluation on April 4, 1973. Dr. Sewell stated that he had been plaintiff's doctor for the period from March 26, 1968 to December 19, 1972 with observation at two month intervals. (TR 117). Dr. Sewell noted, by way of history, plaintiff's longstanding cough productive of phlegm and persistent shortness of breath. Dr. Sewell diagnosed chronic obstructive lung disease and pneumoconiosis. He further opined that plaintiff "could not do coal mine work due to shortness of breath and angina." (TR 117).

On March 19, 1973, Dr. Paul Van Lith conducted a pulmonary function study. On the basis of the results, Dr. Van Lith described Mr. Tonker's spirometry as normal. Dr. Paul Odom completed a second spirometric evaluation on June 4, 1973. Dr. Odom discovered a normal FEV, and a substantially reduced MVV. However, since 20 C.F.R. § 410.490(b)(1)(ii) requires both FEV, and MVV to fall below specified standards, Mr. Tonker is not entitled to the presumption of totally disabling pneumoconiosis as provided by that section. Dr. Odom also interpreted an x-ray film as indicative of pneumoconiosis 1/2 p. Dr. Odom's film was later reread as negative for the disease by Doctors Paul Wheeler, Frederick Stikit, and Aaron Weinstein. Nevertheless, on the basis of all his findings including those developed on physical examination, Dr. Odom found Mr. Tonker to be disabled for "arduous labor, coal mining, and work in a dusty environment."

On February 12, 1974, Dr. H. L. Bassham read a chest x-ray as indicative of opacities consistent with pneumoconiosis, 1/1 p. Dr. D. B. Jones read a film dated March 11, 1974 as suggestive of pneumoconiosis 2/2 p. and bronchitis.

In addition to the medical evidence, Mr. Tonker presented his own oral testimony in support of his claim. Plaintiff described extensive shortness of breath and coughing. He has great difficulty mowing his lawn and is unable to make garden. He also described his inability to stoop over and pick up objects.

In an opinion adopted as the final decision by the Secretary, an Administrative Law Judge found that the preponderance of the evidence did not demonstrate the presence of a totally disabling pneumoconiosis or respiratory condition which might be presumed to be pneumoconiosis. However, the court is unable to conclude that the final decision of the Secretary is supported by "substantial evidence."

Pursuant to statutory authority, the Secretary has prescribed several standards for determining whether a living miner is totally disabled due to pneumoconiosis. The applicable criteria for such a case include: 20 C.F.R. §§ 410.414, 410.416, 410.418, 410.422, 410.424, 410.426, 410.428, and 410.490.

The administrative record in this case includes numerous medical analyses which obviously conflict to some degree. Given such a circumstance, the finding that Mr. Tonker fails to qualify for a presumption of pneumoconiosis under the purely objective criteria of 20 C.F.R. § 410.490(b) is not unreasonable. However, Mr. Tonker's 49 year history of coal mining employment clearly qualifies him for consideration under 20 C.F.R. § 410.414(b). That particular administrative regulation was derived from 30 U.S.C. § 921(c)(4) which provides, *inter alia*, as follows:

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's . . . claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to

pneumoconiosis . . . . In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The court has concluded that the Secretary failed to adequately evaluate plaintiff's claim in light of such a "fifteen year presumption."

In 1972, Congress amended the Federal Coal Mine Health and Safety Act of 1969. The "fifteen year presumption" of 30 U.S.C. § 921(c)(4) was only one of several innovations designed by Congress in 1972 to streamline the adjudicatory process prevalent under the original Act. The Congressional history describing the purpose of the 1972 Amendments clearly reveals an intent to liberalize the avenues through which a claimant might establish entitlement to "black lung" benefits. [Senate Committee on Labor and Public Welfare, Black Lung Benefits Act, S.R. No. 743, 92d Cong., 2d Session, (1972)], U.S.Code Cong. & Admin. News 1972, p. 2305. Furthermore, there was recognition by Congress implicit in its passage of 30 U.S.C. § 921(c)(4), amending 30 U.S.C. § 921 (1969), that purely objective medical evidence, including pulmonary function study results and especially x-ray readings, may not always accurately reflect the degree of a miner's respiratory dysfunction.[1] Finally, it appears that Congress intended to adopt and manifest the medical truism that the incidence of pneumoconiosis increases with the years of exposure to the underground coal mining environment.[2]

■ In light of these observations, the court finds no difficulty in ascertaining that Mr. Tonker had demonstrated the existence of a totally disabling chronic obstructive lung disease. Dr. Sewell opined that plaintiff is totally disabled for coal mining work due to shortness of breath and angina. While Dr. Odom's pulmonary function study of June 4, 1973 revealed FEV to be insufficient to invoke the presumption of 20 C.F.R. § 410.490(b)(1)(ii), his reported MVV of 94.4 L/min. is substandard and is indicative of obstructive lung defect. Dr. Odom also noted plaintiff to be totally disabled for coal mining employment. Furthermore, Mr. Tonker's own testimony is suggestive of substantial functional limitations resulting from lung related difficulties. In addition, Mr. Tonker's 49 year history of coal mining employment in itself constitutes creditable evidence of exposure which must be considered with and related to the medical record. Finally, x-ray evidence provided by Doctors Bassham and Jones in early 1974 revealed higher degrees of pneumoconiosis than that previously described. While such evidence in itself is insufficient for a determination of total disability existing prior to July 1, 1973, such evidence can clearly be related back to positive evidence developed before the termination of the jurisdiction of the Secretary of Health, Education, and Welfare. See *Collins v. Weinberger,* 401 F.Supp. 377 (W.D.Va., 1975).

Even if a claimant does demonstrate evidence of lung impairment as described under 20 C.F.R. § 410.414(b)(1), the Secretary may rebut the "fifteen year presumption" of disabling pneumoconiosis by establishing that the miner does not in fact have pneumoconiosis. [See 20 C.F.R. § 410.414(b)(2)]. *The reasoning of the Secretary, relating to such rebuttal, places undue emphasis on the*

---

1. The Senate Report confronted the medical uncertainty so prevalent in "black lung" cases as follows:

    The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that cases which should be compensated, will be compensated. In the absence of definitive medical conclu-

sions there is a clear need to resolve doubts in favor of the disabled miners or his survivors. S.R. No. 743, 92d Cong., 2d Session, 11 (1972), U.S.Code Cong. & Admin.News 1972, p. 2315.

2. S.R. No. 743, 92d Cong., 2d Session, 13 (1972).

x-ray and spirometric evidence. In essence, the Administrative Law Judge relied on the same objective reports which were insufficient for the presumption of 20 C.F.R. § 410.490(b) as a basis of denial under 20 C.F.R. § 410.414(b)(1). As related above, such an application was clearly discouraged by Congress as indicated by the history of 30 U.S.C. § 921(c)(4). Indeed, it is the court's finding that just as the inconclusiveness of x-ray evidence is sufficient for a denial under 20 C.F.R. § 410.490(b), the same inconclusiveness precludes the Secretary's rebuttal of the "fifteen year presumption" under 20 C.F.R. § 410.414(b)(2) in that the Secretary cannot establish that the plaintiff does not have pneumoconiosis. Since Mr. Tonker's impairment obviously arose out of his life-long work of coal mining, the presumption cannot be rebutted.

The Black Lung Act was intended to be remedial in nature and liberally construed in application. To deny Mr. Tonker's claim for "black lung" benefits under 30 U.S.C. § 921(c)(4) would be contrary to the evidence of record and the intent of Congress. The court is constrained to conclude that the Secretary's final decision is not supported by "substantial evidence." Defendant's motion for summary judgment is denied. Furthermore, the court finds that plaintiff has met the burden of proof established pursuant to the Act. The final decision of the Secretary is reversed and the case remanded for the establishment of proper benefits.

The clerk is directed to send certified copies of this opinion and judgment to the counsel of record.