Jessie GIBSON, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY, Defendant-Appellant.

Supreme Court of Tennessee.

Oct. 9, 1979.

W. Keith McCord, McCord, Cockrill & Conroy, Knoxville, for defendant-appellant.

John T. Johnson, Jr., James S. Tipton, Jr., Kramer, Johnson, Rayson, McVeigh & Leake, Donelson M. Leake, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, for plaintiff-appellee.

## OPINION

HENRY, Justice.

In this workmen's compensation action the trial judge found that plaintiff was totally disabled by the occupational disease of coal worker's pneumoconiosis and awarded benefits under the Federal Coal Mine Health and Safety Act of 1969. We affirm.

### I.

Section 50–1102, T.C.A., provides in pertinent part:

In considering whether an employee has the occupational disease of coal worker's pneumoconiosis and is totally disabled or dies therefrom all the presumptions, criteria and standards contained in or promulgated by reason of the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173, specified as the basis for determining eligibility of applicants for benefits because of said disease or its effects shall be used and be applicable under this law; and where in a proceeding under this law for benefits it is determined the employee or his dependents would be entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, the said employee or his dependents by reason of said determination shall be considered totally disabled from coal worker's pneumoconiosis and its effects,

under this law the same as if said employee, or his dependents, establishes the right to recover benefits based upon a total disability from coal worker's pneumoconiosis, or death by reason thereof under the laws of this state.

By the adoption of this language it was the intent of the legislature to "adopt the Federal law concerning coal worker's pneumoconiosis as the law in Tennessee." *Moore v. Old Republic Insurance Co.*, 512 S.W.2d 564, 567 (Tenn.1974). The presumptions, criteria and standards of "the federal act, and such portions of the federal regulations as pertain thereto, have become as much a part of our Workmen's Compensation Law as if they had been enacted, in their entirety, by the General Assembly." *Blankenship v. Old Republic Insurance Co.*, 539 S.W.2d 23, 26 (Tenn.1976). Thus, the determination as to whether a worker "is totally disabled from pneumoconiosis must be governed by the federal statutes and regulations." *Lawson v. Oneida Fuel and Coal Co.*, 529 S.W.2d 220, 224 (Tenn.1975). We have recognized that "the criteria for total disability under the federal statutes and regulations are substantially different from and less stringent than those ordinarily governing claims under the Tennessee Workmen's Compensation Act." 529 S.W.2d at 222. *See also, Hill v. Four-Leaf Coal Co.*, 529 S.W.2d 225 (Tenn.1975). However, the scope and standard of review are those traditionally applied in other compensation cases. *See infra.*

With this background we examine the federal law and the regulations issued pursuant thereto.

Any discussion of pneumoconiosis must start with the recognition that, to a substantial extent, benefits are awarded on the basis of legal and not technical medical definitions. *Ansel v. Weinberger*, 529 S.W.2d 304 (6th Cir. 1976). This is implicit in the nature and purpose of the act and the regulations governing its application.

Medical definitions must yield to the statute which defines pneumoconiosis as "a chronic dust disease of the lung arising out of employment in an underground coal mine." 30 U.S.C. § 902(b).

The basic enactment is the Federal Mine and Safety Act of 1969 (30 U.S.C. § 801, et seq.), with Title IV being the pertinent portion. The Black Lung Benefits Act of 1972 amends portions of the 1969 Act. One of its purposes was to

> [r]elax the often insurmountable burden of proving eligibility by prohibiting a denial of claims based solely on a negative chest roentgenogram and by presuming that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis. 529 F.2d at 306

A distinction must be drawn between "true" pneumoconiosis and "presumed" pneumoconiosis. Code of Federal Regulations (CFR), Vol. 20, Sec. 410.414(a), specifies that a finding of the existence of pneumoconiosis is made by (1) chest roentgenogram (X-ray), or (2) biopsy, or (3) autopsy. Such a finding would give rise to an irrebuttable presumption of the condition. This is true pneumoconiosis.

The Black Lung Act of 1972 added to the law the "presumed" pneumoconiosis provision, designed to liberalize the law for the benefit of miners who could not establish the existence of the disease by X-ray, biopsy or autopsy. This new provision is contained in 30 U.S.C. § 921(c)(4) which reads as follows:

> (4) if a miner was employed for *fifteen* years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's [or beneficiaries] claim . . . and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection [relates to diagnosis by X-ray, biopsy or other means], and *if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment,* then there shall be *a rebuttable presumption that such miner is totally disabled due to pneumoconiosis . . . .* The Secretary may rebut such presumption only by establishing that (A) such miner

does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. (Emphasis supplied).

Regulation 20 C.F.R. § 410.414(b), adopted pursuant to this liberalized revision, provides, in part, as follows:

(b) *Presumption relating to respiratory or pulmonary impairment.* (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section [relates to X-ray, biopsy and autopsy], *if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment* (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.

(2) This presumption may be rebutted only if it is established that the miner does not, or did not, have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. [Emphasis and bracketed matter supplied]. 529 F.2d at 308

■ Thus, the present status of the federal law as adopted by the General Assembly is that true pneumoconiosis must be established by X-ray, biopsy or autopsy, while the presumed condition, in a case where a miner has been employed in an underground coal mine for fifteen years or more, may be established when "other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment." When the condition is so established there is "a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4).

The regulations make it clear that pneumoconiosis includes "any other respiratory or pulmonary impairment," or any "respirable disease" so long as the conditions are met for the application of the presumption. 20 C.F.R. § 410.401(b)(2) and (3).

■ The presumption may not be rebutted solely by virtue of negative X-rays or biopsies or pulmonary function studies. The act requires, in 30 U.S.C. § 923(b), that:

In determining the validity of claims under this part, *all relevant evidence* shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits . . . and other supportive materials. (Emphasis supplied).

Thus the act contemplates a broad consideration of all relevant aspects of the claimant's health, including a review of the totality of his physical condition. The presumption is not rebutted by X-rays or pulmonary function studies standing alone. The Sixth Circuit has spoken to this specific issue with unassailable reasoning. In *Ansel v. Weinberger, supra,* the Court said:

It is obvious that the negative X-rays may not be relied upon to rebut the presumption of Section 921(c)(4). If he had been able to produce a positive X-ray, there would have been no need to invoke the presumption. The very existence of a negative X-ray is a prerequisite to reliance upon the presumption of pneumoconiosis as established by other evidence. Furthermore, under the 1972 amendment, negative X-ray evidence may not be the sole basis for a denial of benefits. 30 U.S.C. § 923(b). Nor do we believe the presumption of Section 921(c)(4) can be rebutted by showing that pneumoconiosis was not established by pulmonary function studies. The regulation which establishes the levels required for a finding of disabling pneumoconiosis on the basis of a ventilatory study does not purport to provide proof of the nonexistence of pneumoconiosis. 529 F.2d at 309–10

*See also, Tonker v. Mathes,* 412 F.Supp. 823 (W.D.Va.1976), recognizing that because negative X-rays are not enough for denial,

they are not sufficient to rebut, and pointing out that "[t]he Black Lung Act was intended to be remedial in nature and liberally construed in application." 412 F.Supp. at 827.

## II.

Jessie Gibson was employed in the Nation's underground coal mines for a period of 47 years. His first employment was at age 17 and, as he phrases it, "that's all I ever done." The last eight years of his employment was with Consolidation.

During most of this employment he was exposed to coal dust. His respiratory problems date back at least to 1970 and have grown progressively worse. He quit in 1976 because he "didn't have the breath to work and couldn't hardly make it there and back." Further, he said, "I couldn't hardly breathe, my breathing was short. I'd run out of breath and have to sit down and rest." He experienced difficulty in sleeping and was "coughing all the time," expectorating "green looking phlegm." He has never smoked or used tobacco in any form. His wife testified in his behalf confirming his difficulty in breathing, sleeping and coughing.

■ Various reports made by Dr. David A. Waterman, deceased at the time of the trial, appear in the record. In his Overall Ventilatory Pulmonary Function Study of June 10, 1977, his clinical diagnosis was:

CWP [coal worker's pneumoconiosis] and silicosis,[1] simple, category 1. chr. bronchitis, severe in a non-smoker. (Brackets ours).

This diagnosis establishes the existence of simple pneumoconiosis under 20 C.F.R. § 410.428; however, it does not, standing alone, establish the disability: This must come from "other evidence." 30 U.S.C. § 921(c)(4).

Dr. Waterman, in the same study, indicated "considerable dyspnea [difficulty of breathing], shortage of breath, lightheadedness, etc."

■ Dr. Vijaya R. Patel, a thoracic surgeon, first examined claimant on June 14, 1977, and continued to treat him for a number of months thereafter. He testified that he was suffering from severe, chronic and recurring bronchitis (confirmed by bronchoscopy), silicosis of category one, emphysema, dyspnea, and simple pneumoconiosis. He attributed his lung problems, including pneumoconiosis, silicosis, and bronchitis, to long employment in underground coal mines.

Dr. Patel performed pulmonary function studies and took X-rays that were suggestive of simple pneumoconiosis and silicosis and found internodular nodules in both lower lung fields. They were not sufficient to establish complicated pneumoconiosis. The pulmonary function studies were "near normal for his age," but after completion he had "considerable dyspnea, a short wind and had lightheadedness."

While Dr. Patel's testimony was not strong in many significant areas, it did establish beyond doubt that claimant suffered from various pulmonary ailments, including simple pneumoconiosis, all of which were related to coal mining activities and which combined to make him "unable to perform any active job." In arriving at his conclusion of total disability he used his judgment based on a series of clinical observations. Some of his testimony was susceptible to misunderstanding and misconstruction on the simple basis of his principal education and early background being in India. These problems were linguistic and semantic in nature. On balance we find his testimony probative and persuasive. It is evident that he took the totality of claimant's condition and background into consideration, thus providing the "other evidence" upon which a finding of presumed pneumoconiosis may be made. Thus, while X-rays and pulmonary studies did not establish pneumoconiosis, "other evidence demonstrates the existence of a totally disabling

---

1. Defined in *Dorland's Medical Dictionary* 1421 (W. B. Saunders 25th ed. 1974), as pneumoconiosis due to the inhalation of the dust of stone, sand, or flint containing silicon dioxide, with formation of generalized nodular fibrotic changes in both lungs.

chronic respiratory or pulmonary impairment." 20 C.F.R. § 410.414(b)(1).

Dr. Charles L. Kirkpatrick, of Middlesboro, Kentucky, claimant's treating physician, testified that he had chronic obstructive pulmonary disease manifested by emphysema, producing significant breathing problems. He classified these pulmonary problems as a class two functional impairment. On the basis of his examination he was of the opinion that claimant was totally disabled.

Dr. Arnold Richard Hudson, board certified in both internal and pulmonary medicine, testified for Consolidation. He took X-rays and examined the results of the pulmonary function studies made by Drs. Waterman and Patel. He testified that the pulmonary function studies showed no significant abnormality—in fact portions of it were excellent. They indicated that there was no impairment of ventilatory function. He found no objective evidence of pneumoconiosis either in his own X-rays or those taken by Drs. Waterman and Patel. He testified that from a pulmonary standpoint claimant was not disabled.

As is not uncommon in worker's compensation cases the medical evidence was in sharp conflict. There was material evidence from which the trial judge was justified in finding that this coal miner who was employed in underground mines for forty-seven years was suffering from "totally disabling respiratory or pulmonary impairment," giving rise to a rebuttable presumption that he "is disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4), 20 C.F.R. § 410.414(b).

This presumption was not rebutted by X-rays or pulmonary studies. The Black Lung Act of 1972 (30 U.S.C. § 923(b)) makes it clear that "all relevant evidence" must be considered. Further, as pointed out in *Anson, supra,* if claimant had been able to produce positive X-rays there would have been no need for the presumption. Indeed, it is the very existence of negative X-rays that triggers the presumption. Under the statutory scheme, pulmonary function studies might establish the disease, but they are not conclusive and do not defeat the presumption arising from other evidence.

Applying the "presumptions, criteria and standards" contained in the Federal Coal Mine Health and Safety Act of 1969, the Black Lung Act of 1972, and the federal regulations promulgated pursuant thereto, all of which are superimposed on our law, and looking to the totality of claimant's medical history and all other relevant evidence, including his own testimony and that of his wife, we find claimant to be totally disabled by coal worker's pneumoconiosis.

### III.

In arriving at this result we have abided our oft-stated standard of review under which the decision of a trial judge comes to this Court with a presumption of correctness and must be upheld if supported by any material evidence.

Applicant urges upon the Court the proposition that the material evidence standard is not appropriate in black lung cases. It is insisted that "the scope of review should be directed toward a determination of whether or not the trial judge based its (sic) decision upon the presumption, criteria and standards contained in or promulgated by the Act."

These presumptions, criteria and standards being a part and parcel of the governing law, it is difficult to see how a trial judge could decide a black lung case without being governed by these statutory requirements. We have reviewed the cases treating them as governing principles, as this opinion will indicate. We have carefully studied the evidence presented to the trial judge and have briefly digested it in this opinion. From that review we are persuaded that the trial judge not only applied the presumptions, criteria and standards, but also, that he applied them correctly.

The application of these presumptions, criteria and standards, however, does not conflict with our established scope of review nor is any modification required to apply the federal standards.

The judgment of the Trial Judge is Affirmed.

BROCK, C. J., COOPER and HARBISON, JJ., and McLEMORE, Special Judge, concur.