Stanley **BRIDGES**

v.

**LIBERTY INSURANCE COMPANY OF HARTFORD.**

Supreme Court of Tennessee, Special Workers' Compensation Appeals Panel at Knoxville.

April 2000 Session.

Nov. 3, 2000.

Linda J. Hamilton Mowles, Knoxville, TN, for appellant, Security Insurance Company of Hartford.

David H. Dunaway and Frank Q. Vettori, Knoxville, TN, for appellee, Stanley Bridges.

## JUDGMENT

PER CURIAM.

This case is before the Court upon Stanley Bridges's motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be DENIED; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Court further recommends that the Special Workers' Compensation Appeals Panel opinion be published.

Costs will be assessed to Stanley Bridges for which execution may issue if necessary.

ANDERSON, C.J., not participating.

JOHN K. BYERS, Sr.J., delivered the opinion of the court, in which E. RILEY ANDERSON, and ROGER E. THAYER, Sp.J., joined.

## MEMORANDUM OPINION

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tennessee Code Annotated § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. The chancellor ruled that the plaintiff suffered from pneumoconiosis and that the two physicians who testified the plaintiff had the condition were more credible than the physician who testified he did not.

However, the judge found the plaintiff failed to carry the burden of showing he was totally and permanently disabled from the pneumoconiosis; therefore, an award could not be made under the guidelines as expressed in the Federal Coal Mine Health and Safety Act of 1969 and adopted by the Tennessee General Assembly in Tennessee Code Annotated § 50–6–302 *et. seq.* However, the chancellor ruled that even though the evidence and circumstances did not support an award of one hundred percent permanent total disability under the coal worker's pneumoconiosis provisions, the court could still award permanent partial disability under the general occupational diseases provisions of the Tennessee Worker's Compensation Act. TENN.CODE ANN. § 50–6–301. The court then found the plaintiff suffered from coal miner's pneumoconiosis arising out of and in the course and scope of his employment with the defendant and also found the condition causally linked to the plaintiff's exposure to conditions and hazards of his employment. The plaintiff was found to be one hundred percent disabled from a combination of his arthritic condition and pneumoconiosis; however, the disability attributable to pneumoconiosis was found much less significant than the non-compensable arthritic disability, resulting in an award of fifteen percent permanent partial disability to the body as a whole. We affirm the chancellor's finding that the plaintiff's pneumoconiosis is not totally disabling but reverse the award of permanent partial disability benefits.

The review of the findings of fact made by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN.CODE ANN. § 50–6–225(e)(2); *Stone v. City of McMinnville,* 896 S.W.2d 548, 550 (Tenn.1995).

The application of this standard requires this Court to weigh in more depth the factual findings and conclusions of the trial courts in workers' compensation cases. *See Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988).

## Facts

The plaintiff, forty-seven years of age at the time of trial, has a high school diploma. His work history consists of coal mining and work at the mines as a night watchman. His duties in these positions required him to shovel coal dust, pick rock, sweep, and, when in the mines, be exposed to mine effluence. He has also operated a variety of equipment and loaded supplies to take into the deep mine; when working at strip mining he would shoot powder and also work as a drill operator. The plaintiff last worked in the mines in the fall of 1989.

In 1986 the plaintiff was diagnosed with rheumatoid arthritis. As a result, the plaintiff was off work for part of 1986 and all of 1987. During that time, the plaintiff was under medical treatment in which he received gold shots and steroids. He returned to the mine as a night watchman but eventually became unable to perform those duties, and he has not been able to work since leaving his last position with the defendant. The plaintiff admitted he quit working for the defendant because of his rheumatoid arthritis, not because of his breathing difficulties. The plaintiff's wife, who testified at trial, also stated he quit working in the mines because of the rheumatoid arthritis symptoms.

The plaintiff testified he does not currently know of any work he could do because of his breathing problems and his arthritis—he gets out of breath very easily and coughs and spits up sputum often; he has painfully swollen joints on his hands and painful knots on his feet. He mainly watches television, goes for short walks and washes dishes sometimes. He testi-fied the arthritis from which he suffers keeps him from doing just about anything, including at times such everyday tasks as holding a coffee cup, brushing his hair, buttoning his clothes and getting out of the bathtub. He cannot engage in any hobbies or activities that involve reaching overhead or behind.

## Medical Evidence

The plaintiff was treated and/or evaluated by three physicians, two of whom found pneumoconiosis, and one of whom found no evidence of the disease. All of the doctors are certified B readers. B readers are physicians certified by the National Institute of Occupational Safety and Health to interpret x-ray film for the presence of pneumoconiosis.

Dr. Glen Baker began treating the plaintiff for breathing problems in March of 1997. He found category 1/2 pneumoconiosis with normal pulmonary functions. Dr. Baker found the plaintiff one hundred percent occupationally disabled due to pneumoconiosis pursuant to Table 10, Chapter 5 of the American Medical Association *Guides to the Evaluation of Permanent Impairment, Fourth Edition*. However, Dr. Baker conceded the plaintiff would have no impairment whatsoever under Table 8, Chapter 5, which considers pulmonary testing. Dr. Baker acknowledged the plaintiff could, from a pulmonary perspective, perform jobs such as night watchman at the mines as long as he does not work around lung irritants.

Regarding the plaintiff's arthritic condition, Dr. Baker testified that if the plaintiff had not worked since 1989 due to rheumatoid arthritis, then the plaintiff had been totally disabled since that time. Dr. Baker testified the plaintiff would have developed rheumatoid arthritis regardless of his work in the mines.

The plaintiff was seen by Dr. James Lockey for an evaluation. Dr. Lockey's findings were similar to those of Dr. Baker. Dr. Lockey diagnosed pneumoconiosis of category 1/1. He also found the plaintiff to be one hundred percent disabled according to Table 10, but acknowledged that the plaintiff, from a pulmonary standpoint, showed normal results under the AMA guides and the federal guidelines. Dr. Lockey testified the plaintiff could perform some of his previous duties in the mines if he used a respirator. Further, Dr. Lockey stated that from a strictly pulmonary standpoint, the plaintiff could perform any comparable work or could work a desk job or as a forklift operator. The primary reason, according to Dr. Lockey, for the plaintiff's inability to engage in gainful work is his rheumatoid arthritis—the plaintiff has a zero percent impairment in occupations outside of the coal mining industry.

Dr. Dahhan examined the plaintiff and found no evidence of pneumoconiosis. His examination revealed clear lungs, no abnormal sounds, no rhonchi, wheeze, crepitation or crackles, clubbing, edema or cyanosis. Dr. Dahhan's attempts at spirometry measurements were invalid due to poor performance on the plaintiff's part. Dr. Dahhan found no objective data to indicate the plaintiff suffered from pneumoconiosis. He opined that the plaintiff's pulmonary status was such that he could perform his previous work in the mines or any comparable job.

The plaintiff also was evaluated by a vocational disability specialist and underwent a functional capacity evaluation. The far-reaching effect of the plaintiff's rheumatoid arthritis was clearly evident from the vocational disability assessments. The plaintiff could not complete portions of the functional capacity evaluation due to the limitations of the arthritis. Specifically, the plaintiff could not engage in static strength testing, weight capacity testing, unweighted overhead reaching, kneeling, squatting, weight carrying over twenty-five feet, shoulder to overhead weight capacity testing and treadmill testing. The evaluator was unable to evaluate the plaintiff's breathing ability and any limitations that might stem therefrom due to the limitations caused by the rheumatoid arthritis. The evaluator reported that the plaintiff would not tolerate any significant work activity primarily because of his rheumatoid arthritis.

The plaintiff's vocational expert, Dr. Norman Hankins, Ph.D., relied heavily on the functional capacity evaluation in making his assessment that the plaintiff's rheumatoid arthritis prevents him from performing his usual work in the coal mines. He further opined the arthritis would prevent the plaintiff from performing work requiring skills comparable to those used in coal mining. He testified the arthritis accounted for a major portion of the plaintiff's disability. Dr. Hankins was unable to attribute a specific portion of the plaintiff's disability to pneumoconiosis and did not analyze the plaintiff's vocational disability solely according to the disability attributable to it.

None of the physicians testified that the plaintiff's rheumatoid arthritis was caused by or in any way connected to his work in the mines. None of the physicians assessed an impairment rating for the plaintiff's arthritic condition.

### DISCUSSION

When the medical testimony is presented by deposition, as it was in this case, this Court is able to make its own independent assessment of the medical proof to determine where the preponderance of the evidence lies. *Cooper v. INA,* 884 S.W.2d 446, 451 (Tenn.1994); *Landers*

*v. Fireman's Fund Ins. Co.,* 775 S.W.2d 355, 356 (Tenn.1989). Our examination of the medical proof shows the evidence preponderates in favor of the chancellor's finding that the plaintiff is not totally disabled from pneumoconiosis, and we uphold that portion of the ruling. The physicians and the vocational disability expert testified that from a pulmonary standpoint, the plaintiff could at least perform work similar to or comparable with his last position in the mines. The evidence clearly shows the plaintiff is not totally disabled as a result of any pneumoconiosis he may have. The medical evidence does not, however, support the chancellor's award of permanent partial disability benefits under the general occupational diseases statute. Other than pneumoconiosis, the medical proof showed no compensable occupational diseases, thus rendering the general statute inapplicable.

## Coal Worker's Pneumoconiosis

Occupational diseases have long been covered under Tennessee workers' compensation law, and pneumoconiosis has been recognized under that law. *Lawson v. Oneida Fuel and Coal Co.,* 529 S.W.2d 220 (Tenn.1975). In 1971, the Tennessee General Assembly adopted Tennessee Code Annotated § 50–6–302 *et. seq.,* which specifically governs claims arising from coal worker's pneumoconiosis. The statutory provisions make a clear distinction between general occupational diseases, including those that compromise the pulmonary function of the employee, from the specific occupational disease of coal worker's pneumoconiosis. The statute also clearly expresses the intent of the Tennessee General Assembly to "adopt the Federal law concerning coal worker's pneumo-

coniosis as the law in Tennessee." *Moore v. Old Republic Insurance Co.,* 512 S.W.2d 564, 567 (Tenn.1974). Clearly, coal miner's pneumoconiosis is an occupational disease that is outside the scope and treatment of other, more general occupational diseases for purposes of workers' compensation.

The important distinction between the treatment of general occupational diseases versus coal worker's pneumoconiosis is that in cases of a general nature, the employee need not be totally disabled, while in cases of pneumoconiosis, the worker must be totally disabled in order to receive benefits. *See* TENN.CODE ANN. § 50–6–302(b); *Gibson v. Consolidation Coal Co.,* 588 S.W.2d 290 (Tenn.1979); *Blankenship v. Old Republic Ins. Co.,* 539 S.W.2d 23 (Tenn.1976); 20 C.F.R. § 718.204.[1] In *Hensley v. Consolidation Coal Co.,* 658 S.W.2d 94 (Tenn.1983), this Court held the presumptions, criteria and standards contained in or promulgated by reason of the federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. § 901 *et. seq.;* now cited as the Black Lung Benefits Act), will be used in determining whether an employee has the occupational disease of coal worker's pneumoconiosis and is totally disabled therefrom. The applicable federal regulation requires that for recovery of benefits to occur, the worker must be totally disabled by pneumoconiosis. 20 C.F.R. § 718.204. In this case, the chancellor found the plaintiff was not totally disabled due to pneumoconiosis; therefore, an award of benefits under the coal worker's pneumoconiosis provisions was inappropriate.

## General Occupational Diseases

Despite finding the plaintiff less than totally disabled by pneumoconiosis, the chancellor ruled the plaintiff was nonethe-

---

**1.** We realize that in some cases this may create a harsh result that is incongruent with the general intent of our workers' compensa-

tion system; however, the statutory language is clear on its face, thus change cannot be accomplished by judicial fiat.

less entitled to benefits under the general occupational diseases statute. TENN.CODE ANN. § 50–6–301. However, the record is devoid of evidence of any other compensable occupational disease, besides the previously discussed pneumoconiosis, for which benefits would be appropriate. The medical evidence shows the plaintiff suffers from rheumatoid arthritis, which is not an occupational disease, and from pneumoconiosis, which is not totally disabling and therefore not compensable. The trial court's award of fifteen percent permanent partial disability is not supported by a preponderance of the evidence. We, therefore, reverse this portion of the judgment of the trial court and dismiss the claim.

The costs are taxed to the plaintiff.