**Floyd Clinton COOPER,**
**Plaintiff–Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant–Appellee**

**and**

**Tennessee Department of Labor, Second Injury Fund, Defendant–Appellant.**

Supreme Court of Tennessee,
at Nashville.

Sept. 23, 1994.

Charles W. Burson, Atty. Gen. and Reporter, Dianne Stamey Dycus, Sr. Counsel, Nashville, for appellant.

James N. Gore, Jr., Knoxville, for appellee Ins. Co. of N.A.

David H. Dunaway, LaFollette, for appellee Floyd Clintin Cooper.

## JUDGMENT ORDER

PER CURIAM.

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Panel's opinion shall be published.

Costs shall be split equally between the plaintiff-appellee and defendant-appellee, for which execution may issue if necessary.

IT IS SO ORDERED.

IN THE SUPREME COURT
OF TENNESSEE
SPECIAL WORKERS' COMPENSATION
APPEALS PANEL AT NASHVILLE

Mailed July 25, 1994

MEMBERS OF PANEL:

FRANK F. DROWOTA, III, Associate Justice, Supreme Court, JOHN K. BYERS, Senior Judge, and WILLIAM S. RUSSELL, Retired Judge.

## MEMORANDUM OPINION

WILLIAM S. RUSSELL, Retired Judge.

This appeal from the judgment of the trial court in a worker's compensation case has been referred to the Special Worker's Compensation Appeals Panel of the Supreme Court in accordance with Tenn.Code Ann. Section 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law.

## THE CASE

The plaintiff, Floyd Clinton Cooper, was employed by Kentucky Apparel Company, Inc. as a maintenance employee. On January 27, 1991, in the course and scope of his employment, he fell into a pit and severely injured his left knee. Subsequent surgery to the knee was necessary. The trial court found the left leg to be 80% permanently partially vocationally disabled, which equates to 40% to the whole body.

It was undisputed that the employee had in 1985 suffered a back injury at work, and settled that worker's compensation claim by court approval upon the basis of a 25% permanent partial vocational disability to the body as a whole.

Cooper sued the Insurance Company of North America, the employer's Workers' Compensation liability insurer, and the Tennessee Department of Labor Second Injury Fund.

The trial court found that the plaintiff was totally and permanently vocationally disabled. His weekly benefit rate was judged to be $140.62. The employer had prior knowledge of the 1985 injury and disability.

The court found that the insurer should pay 40% of the judgment and the Second Injury Fund should pay 60%. Because the employee's average weekly wage was less than the maximum weekly benefit, the court awarded an additional 150 weeks at $35.00 a week, to be paid from the Second Injury Fund. Discretionary costs were assessed against defendants, 40% to the insurer and 60% to the Second Injury Fund.

The insurer was ordered to pay $14,090.22 in a lump sum and $140.62 per week until a total of 160 weeks of compensation is paid. Counsel for the Insurance Company of North American report to this Court that said lump sum has now been paid and weekly benefits are being paid. Said insurer does not question the award of total permanent vocational

disability, and asks only that the judgment against it not be increased.

The Second Injury Fund appealed.

### ISSUES ON APPEAL

The Second Injury Fund questions the judgment against it under T.C.A. Sec. 50–6–208(a) for 60% of the plaintiff's 100% total permanent disability.

The plaintiff, Floyd Clinton Cooper, has moved to dismiss the appeal by the Second Injury Fund because no cost bond for the appeal was filed.

### MOTION TO DISMISS APPEAL

■ While it is clearly established that the Second Injury Fund may be assessed with costs, *Reagan v. American Policyholders' Insurance Company*, 842 S.W.2d 249 (Tenn. 1992), no bond is required in an appeal on behalf of the state, its agencies or officers. *Findlay v. Monroe*, 196 Tenn. 690, 270 S.W.2d 325 (1954).

This motion to dismiss the appeal of the Second Injury Fund is denied.

### PROOF OF INJURY AND DISABILITY

The plaintiff testified that the pit into which he fell was approximately twelve feet deep and contained eight to ten feet of water. He was treated by Dr. Alexander Chernowitz, M.D., who performed surgery upon the injured left knee. The plaintiff returned to work in July of 1991 and continued working until around January of 1992. He bumped the knee on October 17, 1991 on the job, and at that time was treated by Dr. William E. Kennedy, M.D. When he suffered the back injury in 1985 he was treated by Dr. William Patterson, M.D. For many years he had been treated by Dr. Jack C. Smith, M.D., who re-commenced treating him on March 27, 1992, for traumatic arthritis and lipomas.

Cooper testified on direct examination on July 19, 1993, that there was no gainful occupation that he felt that he could do. He said that he had a lot of knee pain, and that a lot of times if he sits long enough he gets numbness in his leg. He then gets up and moves around and that gets the numbness out of his leg. He cannot push a mower, and requires a cane to walk upon rough terrain. He has numbness if he sits or lies too long on his leg. He must move around.

On cross-examination plaintiff testified that he did not work at all for three years after his back injury in 1985.

After the knee injury in January of 1991 he was released to return to light duty work in July of 1991. In October of 1991 he tripped and fell on the job. He went back to work through December or January 1992, when he quit. He has not tried to work anywhere since. He testified that both his back and knee injuries are keeping him from working. He can't use his knee to lift with any more.

Drs. Chernowitz, Smith and Kennedy testified by deposition. Dr. Chernowitz is an orthopaedic surgeon, called in to treat Mr. Cooper five days after he had injured his knee. He diagnosed a hyperextended left knee which resulted in instability. Dr. Chernowitz, together with a Dr. Neely, surgically repaired the posterior cruciate ligament, the medial ligament, reattached the medial meniscus, and repaired the posterior oblique ligament.

Dr. Chernowitz opined that Mr. Cooper reached maximum recovery on December 16, 1991. He assigned plaintiff an impairment rating of 33% to the left lower extremity, which he testified equated to 13% of the whole person.

Dr. Chernowitz restricted him from working at heights or on ladders, and required him to wear a knee brace.

Dr. Chernowitz referred Mr. Cooper to a physical therapist, but the result was not what the physician would have liked. In this regard, Dr. Chernowitz testified: "I think that the element that was missing was the completion of a muscular rehabilitation and training that would have permitted a fairly damaged but repaired knee to function better with better muscular control. And it was that element of after care or rehabilitation requires very substantial and continued and devoted effort by a patient and also a certain level of pain tolerance and determination to get well and probably another complex col-

lection of social and emotional factors which are even beyond my expertise. But in the end, that job was never really done well." The physical therapist reported to Dr. Chernowitz on October 7, 1991, that Mr. Cooper's attendance had been quite sporadic, that he had recently not been coming on a regular basis, that he did not show up for his appointment that day and was discharged for noncompliance with the program.

Dr. Chernowitz testified that during all of the extensive time that he treated Mr. Cooper he was never told that Mr. Cooper was having trouble with his back. In Dr. Moore's notes of November 6, 1991, it is recorded that Mr. Cooper reported an absence of symptoms in his back.

Dr. Moore's notes of December 9, 1991, reflect that Mr. Cooper had missed a considerable degree of work despite his restrictions "on advice or volition other than instructions from us". Dr. Moore further recorded: "I have no specific etiology as to why Mr. Cooper fails to improve other than suboptional training stimulation." Dr. Chernowitz testified that full compliance by Mr. Cooper would have increased his ability to work.

Dr. Chernowitz testified that Mr. Cooper was able to work with restrictions, that on days when he wasn't going to therapy it would be okay if he could tolerate it to allow him to work as much as ten hours to make up for some lost time on the therapy then. He testified unequivocally that Mr. Cooper was capable of returning to work, with restrictions that he was not to handle something over twenty-five pounds, nor usually work more than six hours a day and was to stay away from ladders and scaffolds and heights. He testified: "By the time I last saw him I didn't think he would ever be fit to do all what he had been doing."

Dr. Jack C. Smith, M.D., a family practitioner, was deposed on June 26, 1992. He first started treating Mr. Cooper in 1978. He did not see him for his January 1991 knee injury. He saw him on November 12, 1991, after the October 1991 incident. His notes on the 1985 back injury had been "skeletonized" from his records. He found an office note dated 1986 reflecting that he had deferred to the treating specialist the making

of a disability rating. Nevertheless, he opined that Mr. Cooper now has a 20% whole body impairment from his back injury, up from 12% to 15% that he recalls would have been preexisting from the 1985 injury. He testified that because of the 1985 injury Mr. Cooper shouldn't have been lifting over 10 to 15 pounds; and lifting, bending, stooping, kneeling and trunk twisting would have been limited.

When he saw Mr. Cooper on March 27, 1992, he diagnosed lipomas, or knots over his body. He also found joint swelling and pain, which he called traumatic arthritis.

On his deposition, although he did not treat Mr. Cooper for his 1991 fall, he opined that the fall aggravated his traumatic arthritis, and rendered him unable to work at any job that he is trained to do.

When asked to assess an anatomical rating of Mr. Cooper's impairments, he testified: "This is something that I'm just not real familiar with." Nevertheless, he testified: "Something on the back, something on the order of twenty percent, the leg twenty percent, and of course, I've already addressed the work situation."

Dr. Smith said that Mr. Cooper had generalized arthritis prior to 1991; and in his opinion, although he didn't see Mr. Cooper from 1987 until November of 1991, he was of the opinion that the January 1991 fall was the factor that aggravated his generalized arthritis.

Dr. Smith gave no explanation for Mr. Cooper's ability to return to work in July of 1991. Mr. Cooper continued to work for a month or two after he returned, without physician referral, to Dr. Smith's care in November of 1991.

The third medical deposition was that of William E. Kennedy, M.D., and was taken on July 6, 1993, by counsel for the employer. Dr. Kennedy is an orthopaedic surgeon whose clinic specializes in sports medicine. He did an orthopaedic evaluation examination on August 12, 1991; and did a re-examination on September 4, 1992. Dr. Kennedy took a history from Mr. Cooper, reviewed his prior medical records and operative report

relating to his 1991 knee injury, and took X-rays of the left knee.

Mr. Cooper was complaining of residual infropatello pain and pressure with crepitation or popping in the left knee. There was no significant swelling. He lacked the last few degrees of extension to completely straighten the knee, and was still using a brace upon the knee. The X-rays showed lipping in the tibial spines and femoral compartment, but otherwise were unremarkable. Examination of the left knee showed no evidence of any significant residual ligamentous laxity. He had moderate residual left quadriceps atrophy and lacked the last twenty degrees of extension. Flexion was essentially normal. There were no signs of any internal derangement active or ongoing; that is, any kind of mechanical derangement inside the knee. His impression at that time was status post surgical repair of the multiple torn ligaments of the left knee with residual loss of motion and quadriceps atrophy.

Dr. Kennedy opined that under the AMA guidelines Mr. Cooper had a 17% permanent physical impairment to the left lower extremity as a result of this left knee condition.

Regarding the pre-existing back injury, Dr. Kennedy testified that he did not feel that in his opinion he could attribute the abnormal findings to the lumbosacral spine with any reasonable medical certainty to the injury of January 27, 1991. Dr. Kennedy found that Mr. Cooper's back condition was compatible with the findings described by Dr. William Patterson in 1985 and 1987, whose medical records concerning Mr. Cooper were reviewed by Dr. Kennedy.

Dr. Kennedy testified that he found no significant changes in the condition of Mr. Cooper's knee when he conducted a re-examination on September 4, 1992.

Dr. Kennedy reported that three out of five Waddell signs were positive for symptom exaggeration, which he described as clinically significant.

On cross-examination, he testified that his opinion regarding Mr. Cooper's back impairment is 15%, the same as Dr. Patterson's at the time of the back injury in 1985. He testified that the 17% impairment to the left leg translated to 7% impairment to the whole body.

Dr. Kennedy reported that Mr. Cooper's future employment, with regard to his knee, should not require kneeling, squatting, crawling, ladder climbing or excessive stair climbing, or working over slippery or sloping surfaces, or the handling of large objects which would require the pushing and bracing of the object with the left knee.

Dr. Kennedy also reported that he found no objective evidence of any additional injury to Mr. Cooper's low back, which could be attributed with any reasonable certainty to the January 27, 1991, injury. He reported that regarding the back condition, his future employment should not require repeated bending, stooping or squatting, heavy lifting, working over rough terrain, excessive ladder climbing or stair climbing, vigorous or strenuous pushing or pulling, or repeated and vigorous jostling such as operating machinery over rough terrain or working above the level of his shoulders.

The plaintiff called physical therapist Kelly Lenz to testify in person. She examined Mr. Cooper. Range of motion tests to the left knee amounted to a 12% impairment to that lower extremity. She recommended no constant lifting, but he could lift up to ten pounds on a frequent or regular basis if performed without squatting. He could lift fifteen to twenty pounds occasionally.

Plaintiff called Norman E. Hankins, Ed.D., a vocational expert. He gave Mr. Cooper tests which he testified showed an I.Q. of 89, reading at fourth grade level, spelling at third grade level, doing arithmetic at fourth grade level. He found that Mr. Cooper had completed the eighth grade and obtained a GED in 1978. All of his work experience had required medium to heavy exertion. Dr. Hankins reviewed the depositions of Drs. Chernowitz, Kennedy and Smith, summarized heretofore. Based on his tests and the depositions, he testified: "I don't think he would be able to work with all those restrictions. I would consider him to be a hundred percent."

On cross-examination, Dr. Hankins admitted that he based his total disability opinion

upon both the back and knee injuries. He attributed 65% to 70% to the back, based upon Dr. Kennedy's restrictions; and 80% to 90% to the back based upon Dr. Smith's restriction. He agreed that this pre-existed the knee injury.

It is noteworthy that plaintiff and the employer's insurer have stipulated that there was no additional permanent physical impairment sustained by Mr. Cooper to his back from the January 27, 1991, accident. They also agreed that Mr. Cooper is 100% vocationally disabled; but the Second Injury Fund disagrees, and that issue is central to a disposition of this case on appeal.

### CONTENTIONS OF THE PARTIES ON APPEAL

The Second Injury Fund contends that this claim comes under T.C.A. Sec. 50–6–208(b) rather that (a); that it was not a case for judgment against the fund under (a) because the combination of injuries did not amount to total and permanent disability under the rules laid down in *Minton v. State Industries, Inc.*, 825 S.W.2d 73, 78 (Tenn. 1992). As to (b), the Second Injury Fund contends that it has no liability because the combination of the awards does not exceed 100% permanent disability to the body as a whole.

The plaintiff-appellee, Mr. Cooper, contends that the proof establishes that he is 100% vocationally disabled, that the two injuries combined result in greater disability than the mathematical sum of the two ratings. He contends that this is an (a) case and that the 100% permanent and total disability judgment is supported by the medical testimony as well as the testimony of the vocational expert, Dr. Hankins; and he contends that this evidence is totally unrebutted.

The defendant-appellee, the Insurance Company of North America, does not contest the finding that Mr. Cooper is 100% permanently and totally disabled; but submits that it can only be held liable for an award to the left lower extremity, and asks that the judgment against it not be increased and only altered downward, if at all. The insurer agrees with the trial court that this is a

subsection (a) case, and asks that the judgment as to it be affirmed, unless reduced.

### STANDARDS OF REVIEW APPLICABLE

■ Our review is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings below, unless the preponderance of the evidence is otherwise. T.C.A. Sec. 50–6–225(e)(2) (1991). This standard of review requires this Court to weigh in depth the factual findings and conclusions of the trial court. *Humphrey v. David Witherspoon, Inc.* 734 S.W.2d 315 (Tenn.1987).

■ The extent of vocational disability is a question of fact to be determined from all of the evidence, including lay and expert testimony. *Worthington v. Modine Mfg. Co.*, 798 S.W.2d 232, 234 (Tenn.1990).

■ A medical expert's rating of anatomical disability is one of the relevant factors, but the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness. *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 458 (Tenn.1988).

■ When the medical testimony is presented by deposition, as it was in this case, this Court is able to make its own independent assessment of the medical proof to determine where the preponderance of the evidence lies. *Landers v. Fireman's Fund Ins. Co.*, 775 S.W.2d 355, 356 (Tenn.1989); *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn.1993).

### ANALYSIS AND CONCLUSIONS

■ This case is on all fours with the case of *Minton v. State Industries, Inc.*, 825 S.W.2d 73 (Tenn.1992). Ms. Minton was found by the trial judge to be totally and permanently disabled. She had in 1980 suffered a back injury that resulted in a court-approved worker's compensation award of 10 percent permanent partial disability to the body as a whole. In 1989 she suffered a knee injury which resulted in an anatomical 30 percent impairment to the right lower extremity, found by the trial court to be vocationally 100 percent. The employer was

held to be liable for 200 weeks of benefits, and the Second Injury fund a like amount.

This Court reversed the judgment against the Second Injury Fund, holding that the employee was bound by the prior judicial determination of the extent of her back injury; and the 10 percent from that injury combined with 50 percent to the body conversion from the knee injury totaled only 60 percent, not 100 percent. This Court found no medical evidence in the record that the knee injury aggravated the previously injured back, which might have allowed the prior injury to be redefined if it had been aggravated by the subsequent injury.

The dispositive issue in the case at bar is whether or not there is sufficient medical testimony of causation to redefine the back injury suffered by Mr. Cooper. In *Wiseman v. E'Con Mills, Inc.*, 517 S.W.2d 191 (Tenn. 1974), Wiseman injured his right ankle on July 16, 1967, and was awarded 30 percent disability to the right lower extremity. Subsequently, on March 5, 1973, he injured his left foot. As a result of the two injuries, the plaintiff was having to place abnormal stress on his right ankle in attempting to walk, and the right extremity was causing him extreme discomfort. The orthopaedic specialist who testified in the case stated that the employee was totally and permanently disabled as the result of the two injuries, the first injury having been aggravated by severe traumatic arthritis during the intervening years.

This Court in *Minton* found no medical proof that that plaintiff was 100 percent disabled, and found no medical proof which would redefine the first injury as was found in *Wiseman*. Consequently, the judgment against the Second Injury Fund was reversed.

Applying the teaching of *Minton* to the case at bar, it is obvious that the 25 percent disability to the body as a whole court-approved for the 1985 back injury, and the 80 percent to the left lower extremity, (converted to 40 percent to the whole body) from the 1991 injury do not compute to 100 percent, unless the back injury can be redefined.

Squarely confronting such a redefinition is the stipulation that there was no additional permanent physical impairment sustained by Mr. Cooper to his back from the January 27, 1991, accident. The medical evidence strongly supports this stipulation.

We find that the medical evidence preponderates against a finding that Mr. Cooper is totally and permanently disabled. It is undisputed that he returned to work after the second injury, and worked for months with restrictions, at times working 10 hour days. This suit was filed on June 13, 1991. He returned to work the following month and worked about six months before quitting. He apparently did not put the prescribed effort into his rehabilitation physical therapy. Those experts who deemed him unable to work relied most heavily upon his back injury, yet he had worked for years with the back injury and now stipulates that the accident that injured his knee did not add any permanent impairment to his injured back. We do not say that there is no medical evidence that his back injury should be redefined, or that he is totally disabled. What we hold is that the total medical evidence preponderates against the position of the employee on these issues.

The judgment of the trial court is affirmed as to the Insurance Company of North America, reversed as to the Second Injury Fund, and remanded. Costs on appeal shall be taxed equally between the plaintiff and the insurer. Discretionary costs below shall be reconsidered by the trial court.

FRANK F. DROWOTA, III, Associate Justice Supreme Court, and JOHN K. BYERS, Senior Judge, concur.