IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

November 2, 1998

Cecil W. Crowson
Appellate Court Clerk

|  |  |  |
|---|---|---|
| DEBORAH WILLIAMS | ) | FOR PUBLICATION |
|  | ) |  |
|  | ) | FILED: NOVEMBER 2, 1998 |
| Plaintiff-Appellee | ) |  |
|  | ) | HENRY COUNTY |
| v. | ) |  |
|  | ) | HON. C. CREED MCGINLEY, |
| TECUMSEH PRODUCTS COMPANY | ) | JUDGE |
|  | ) |  |
| Defendant-Appellant | ) | NO. 02-S-01-9702-CV-00012 |

For Appellee:                    For Appellant:

GAYDEN DREW IV                   DAVID F. HESSING
Jackson, TN                      Paris, TN

OPINION

JUDGMENT OF TRIAL COURT AFFIRMED                    BIRCH, J.

The Special Workers' Compensation Appeals Panel approved the trial court's award of benefits to Deborah Williams, the plaintiff, who had suffered symptoms of carpal tunnel syndrome related to her employment as an assembly-line worker for Tecumseh Products Company, the defendant. At issue are the causation and permanency of the worker's injuries and the payment of discretionary costs related to the deposition of an examining physician. For the reasons appearing below, we adopt the panel's findings of fact and conclusions of law with respect to the issues of causation and permanency. Although we affirm the award of discretionary costs, we vacate the panel's order invalidating certain local procedures of the Twenty-Fourth Judicial District.

I

The plaintiff is a thirty-eight year old female who has been an assembly-line worker, sewing machine operator, bail bondsperson, cashier, and restaurant manager. In 1995, she began operating a machine which required her to perform repetitive motions with both hands throughout her entire shift at the defendant's facility.

The plaintiff testified that she had experienced no problems with her hands, wrists, or arms prior to returning to the defendant's employment in March 1995. When she returned, however, she elected to wear a set of wrist braces provided by the defendant. Even so, in July 1995, the plaintiff reported having experienced "burning and tingling" in both her hands and arms. The

defendant responded to this complaint by providing her with a list of doctors to see.

Ronald Bingham, M.D., examined the plaintiff and determined that she had a mild left tennis elbow, although her nerve conduction tests were normal. The plaintiff continued to work. On November 10, 1995, she injured her right hand at work which required emergency treatment for minor lacerations, numbness, and swelling. As a result, James McGee, M.D., placed the plaintiff on light duty for a week due to continued swelling.

The plaintiff experienced further pain in her right arm and was referred to Lowell Stonecipher, M.D., in January 1996. Stonecipher noted that the plaintiff had a cyst, swelling, and a positive *Finkelstein's* test.[1] He performed surgery on her right wrist and subsequently released her to light duty in March 1996, even though she complained of unexplained numbness and tenderness. The plaintiff testified that the swelling and burning continued after the surgery, although she did experience some relief in her thumb.

The plaintiff returned to McGee in late March 1996, complaining about continued pain and swelling. Although he confirmed the swelling, he returned her to light duty and told her to follow up with Stonecipher. On April 1, 1996, Stonecipher

---

[1]The *Finkelstein's* test is performed by placing the thumb in the palm and then forcing the hand toward the little finger. If the patient complains of pain, the test is considered positive. A positive test is used to diagnose tenosynovitis which is an inflammation of a tendon and its enveloping sheath.

opined that the plaintiff would retain no permanent impairment secondary to her wrist surgery and could return to full duty. Upon her return, she received a new job which required repetitive motion. She performed this job until April 12, 1996, when she quit because of continual pain. As of the date of trial, the plaintiff had not secured a new job, although she had submitted several applications.

Other physicians examined the plaintiff after she had terminated her employment. Joseph Boals, M.D., a board-certified orthopedic surgeon, examined her on June 4, 1996, at the request of her attorney. Boals found that the plaintiff had prominent swelling over the radial aspects of both wrists, patchy numbness on the right side, and positive results on both *Finkelstein's* and *Phalen's* tests.[2] In his deposition, he opined that she suffered from "occupational stress syndrome bilaterally manifested by bilateral tenosynovitis, *de Quervain's* tenosynovitis[3] and bilateral carpal tunnel syndrome" caused by her "multiple jobs and work done at Tecumseh." Based on her significant grip loss, he rated her as having a 30 percent anatomical impairment to her right arm and a 20 percent anatomical impairment to her left arm.

---

[2]The *Phalen's* test is performed by flexing the wrist and holding it flexed for up to one minute. If the patient complains of tingling and numbness at the distribution of the median nerve of the hand, the test is said to be positive at that time. This test is used to determine whether a patient is suffering from carpal tunnel syndrome.

[3]*De Quervain's* tenosynovitis is an irritation of the lining of the tendons in the first dorsal compartment of the wrist. It is characterized by swelling, irritation, and pain.

4

Next, Anthony Segal, M.D., a neurologic surgeon, evaluated the plaintiff on October 3, 1996, at the request of the defendant. In his report, Segal noted the plaintiff's poor grip strength and "very strange" symptoms, but he disagreed with Boals's diagnosis of carpal tunnel syndrome and reported that the plaintiff had "no impairment rating from a neurological point of view." He wrote that he could not diagnose with certainty because the plaintiff's problems, if any, appeared to be orthopedic in nature. He recommended that she be examined by a hand surgeon.

Finally, Work Solutions[4] performed an evaluation of the plaintiff. The evaluation report noted that while the plaintiff's fine motor dexterity was good, the results of materials-handling and grasp-strength testing indicated submaximal effort on her part.

The trial court summarized all of the evidence from the bench, noting the conflicts between the various medical reports. The court credited Boals's testimony and awarded the plaintiff benefits for permanent impairments of 50 percent to her right arm and 40 percent to her left arm. The Special Workers' Compensation Appeals Panel affirmed the trial court's award in all respects.

---

[4]Work Solutions is a Memphis business that performs evaluative testing on injured employees. Through a "functional capacity evaluation" including activities such as walking on a treadmill, Work Solutions measures, *inter alia*, an individual's grip strength, overhead lifting ability, and endurance. These measurements are then analyzed to determine the range of work activities that the individual should be able to perform.

II

The defendant asserts that the trial court erred in finding that the plaintiff's injuries were caused by her employment. In workers' compensation cases, appellate review is *de novo* on the record accompanied by a presumption that the findings of the trial court are correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 1997); Lawson v. Lear Seating Corp., 944 S.W.2d 340, 341 (Tenn. 1997). To satisfy this standard of review, we are required to conduct an independent examination to determine where the preponderance of the evidence lies. Wingert v. Government of Sumner County, 908 S.W.2d 921, 922 (Tenn. 1995).

An injury arises out of employment if it has a rational, causal connection to the work. Reeser v. Yellow Freight Sys., Inc., 938 S.W.2d 690, 692 (Tenn. 1997). In this case, the trial court had but two expert opinions regarding causation: one unequivocally finding causation and the other finding that the plaintiff's job tasks would not "place an employee at risk for cumulative trauma disorders."

The testimony of expert witnesses must be considered in conjunction with the employee's testimony as a lay witness. Thomas v. Aetna Life & Cas. Co., 812 S.W.2d 278, 283 (Tenn. 1991). The trial court found that the plaintiff's "very credible testimony" bolstered the medical evidence of causation. Given this determination of credibility and the trial court's careful review

6

of the medical evidence, we cannot say that the evidence preponderates against the trial court's finding of causation.

III

The defendant next asserts that the evidence preponderates against the trial court's award of permanent disability benefits. The defendant's argument in this regard has three points: (1) the evidence of permanency; (2) the disability rating provided by Boals; and (3) the extent of vocational disability found by the trial court.

The medical evidence in this record, as in many cases, conflicts regarding whether the disability is permanent. In resolving the conflict, the trial court gave great weight to the deposition testimony of Boals who opined that the plaintiff's injuries were permanent, although she "could" experience some improvement while the underlying condition persists. The trial court did not abuse its discretion in crediting Boals's opinion more than the other physicians' opinions. See Johnson v. Midwesco, Inc., 801 S.W.2d 804, 806 (Tenn. 1990).

Additionally, we do not agree with the defendant that Boals's disability rating is erroneous because it was based solely on the plaintiff's loss of grip strength. An examination of Boals's testimony as a whole makes it clear that he considered all of the evidence in assessing the plaintiff's condition. He did not find any evidence that the plaintiff malingered, and he testified

7

that his ratings were in accordance with the American Medical Association's *Guides to the Evaluation of Permanent Impairment*. See Tenn. Code Ann. § 50-6-204(d)(3) (Supp. 1997) (requiring adherence to specified treatises for assessing the degree of anatomical impairment).

Moreover, consideration of the extent of the plaintiff's vocational disability is a question of fact. Jaske v. Murray Ohio Mfg. Co., 750 S.W.2d 150, 151 (Tenn. 1988). The trial court may make an independent examination of the evidence, see Cooper v. Insurance Co., 884 S.W.2d 446, 451 (Tenn. 1994), and is not bound to accept any expert's opinion regarding vocational disability. Prost v. City of Clarksville Police Dep't, 688 S.W.2d 425, 428 (Tenn. 1985). Tennessee Code Annotated § 50-6-241(a)(1) (Supp. 1997) lists the relevant factors to be considered those being: lay and expert testimony; the employee's age; the employee's education; the employee's skills and training; the local job opportunities; and the employee's capacity to work at types of employment available in the employee-claimant's disabled condition.

In this case, the trial court specifically noted its consideration of many factors, including the plaintiff's testimony concerning how the impairments affect her daily life. In cases such as this, great deference must be given to the trial court's findings. See Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997) (considerable deference where issues of credibility and weight of oral testimony are involved). We thus cannot find

that the evidence preponderates against the trial court's rating of vocational disability.

IV

The final issue raised by the defendant concerns the trial court's award of costs to the plaintiff. The award included the costs of giving and transcribing Boals's deposition. The defendant argues that Boals's submission of a standard medical report made his deposition unnecessary. Although Boals failed to indicate causation on the form, the defendant asserts that this omission could have easily been rectified without the need for a costly deposition.

Tennessee Code Annotated § 50-6-226(c)(1) (Supp. 1997) provides:

> The fees charged to the claimant by the treating physician or a specialist to whom the employee was referred for giving testimony by oral deposition relative to the claim, shall, unless the interests of justice require otherwise, be considered a part of the costs of the case, to be charged against the employer when the employee is the prevailing party.

Boals was "a specialist to whom the employee was referred" for an evaluation. We do not think it was unreasonable for the plaintiff to take his deposition, especially where the defendant argued against both Boals's causation and permanency findings. In addition, where the trial court did not abuse its discretion in

9

awarding the physician's deposition fee, the court clearly had discretion to also award the plaintiff the court reporter's costs for transcribing that deposition. <u>See</u> Tenn. R. Civ. P. 54.04(2).

Despite this seemingly uncomplicated resolution, a majority of the Special Workers' Compensation Appeals Panel invoked Tenn. R. App. P. 13(b) to address an issue not raised by the parties with respect to these discretionary costs. Specifically, the panel addressed the question whether some procedures of the Twenty-Fourth Judicial District[5] for workers' compensation cases conflicted with state statutes and court rules such that the procedures should be invalidated.

Tennessee Rule of Appellate Procedure 13(b) provides that review on appeal will generally only extend to those issues raised by the parties. The rule further provides that an appellate court has discretion to consider issues not raised by the parties in order, among other reasons:

>     (1)   to prevent needless litigation,
>     (2)   to prevent injury to the interests
>           of the public, and

---

[5]The specific local procedures reviewed by the panel in this case were as follows:

1)   Whether the requirement of scheduling a benefit review conference within thirty days of a request for such conference conflicts with Tenn. Code Ann. § 50-6-239(c)(1) (Supp. 1997);
2)   whether prescribing the nature of the evidence to be presented at a benefit review conference conflicts with Tenn. Code Ann. § 50-6-235(c) (Supp. 1997); and
3)   whether limiting the evidence which can be presented at a trial and limiting the ability of parties to take a deposition conflicts with Tenn. Code Ann. § 50-6-235(c)(1) and Tenn. R. Civ. P. 30.

> (3) to prevent prejudice to the judicial
> process.

According to the majority, the second and third reasons quoted above "not only justif[ied], but dictate[d]" that the local procedures be reviewed by the panel. Such review led the panel majority to declare the local procedures in question null and void and to direct the affected judges to "enter an order in their respective courts to reflect the change in their Local Rules as brought about herein."

Justice Holder, a member of the panel, invoked Tenn. Code Ann. § 50-6-225(e)(5)(A) (Supp. 1997) to obtain review by the other members of the Court. The Court has reviewed this issue and finds no compelling reason to review the local procedures. Accordingly, the Court adopts the views expressed by Justice Holder in the separately filed concurring opinion, which is, in words and figures as follows:

> While I concur in the majority's affirmance of the trial court's judgment, I write separately to express my discomfort with the majority's decision to invalidate the local rules of the Twenty-Fourth Judicial District pertaining to workers' compensation cases. The issue of whether the local rules were valid was not raised by either party and was unnecessary to the disposition of the issues properly before us.
>
> Since 1983, trial judges have been required to adopt local rules.[6]

---

[6]Tennessee Rules of the Supreme Court, Rule 18 requires all trial courts to adopt in writing local rules prescribing procedures for setting cases for trial, obtaining continuances, disposition of pre-trial motions, settlement or plea bargaining deadlines for

11

In this case, the validity of the local rules addressing workers' compensation cases for the Twenty-Fourth Judicial District was not raised by either party. Accordingly, the issue has not been squarely placed before this panel for disposition. Rule 13(b) of the Tenn. R. App. Proc. provides:

> Review generally will extend only to those issues presented for review. The appellate court shall consider whether the trial and appellate court have jurisdiction for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

None of these reasons appear to apply to the determination of the validity of these local rules. I would find that it is improper for this panel to raise this issue *sua sponte* in the absence of a compelling reason recognized under Rule 13(b).

V

It results that the panel's conclusions that the evidence does not preponderate against the trial court's findings of causation, permanency, and vocational disability ratings of 50 percent to the plaintiff's right arm and 40 percent to the

---

criminal cases, and preparation, submission and entry of orders and judgments. In addition, trial courts may adopt "other rules not inconsistent with the Rules of Civil Procedure and Rules of Criminal Procedure."

plaintiff's left arm are approved and affirmed.  We approve and affirm also the award of discretionary costs to the plaintiff.  We vacate, however, the order invalidating the Twenty-Fourth Judicial District's procedures for workers' compensation cases, expressing neither approval nor disapproval of those procedures.

Costs are taxed to the defendant, for which execution may issue if necessary.  No appellate costs, however, shall be taxed to either party for the review in this Court under Tenn. Code Ann. § 50-6-225(e)(5)(A).

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Drowota, J.